ESTATE OF LEACH ET AL., APPELLANTS, *v.* SHAPIRO ET AL., APPELLEES.

394

(No. 11238—Decided May 2, 1984.)

*Mr. Robert J. Burns* and *Mr. David R. Wilson,* for appellant.

*Mr. William L. Curtice,* for appellants.

*Mr. Mark J. Skakun,* for appellees.

BAIRD, J.  Edna Marie Leach entered Akron General Medical Center on July 27, 1980, suffering from respiratory distress. Mrs. Leach subsequently suffered a respiratory-cardiac arrest, and though her heartbeat was restored, Mrs. Leach remained in a chronic vegetative state. Mrs. Leach was placed on life support systems to sustain her breathing and circulation. On October 21, 1980, Mrs. Leach's husband, as her guardian, petitioned the Summit County Probate Court for an order to terminate the life support measures. The court issued this order on December 18, 1980. *Leach* v. *Akron General Med. Ctr.* (1980), 68 Ohio Misc. 1 [22 O.O.3d 48]. On January 6, 1981, the respirator was disconnected, and Mrs. Leach died.

On July 9, 1982, plaintiffs filed this action seeking damages for the time Mrs. Leach was on life support systems. Defendants filed a motion in the alternative, to dismiss or for summary judgment. This motion was not supported by affidavits or other evidence. Civ. R. 12(B) provides that a Civ. R. 12(B)(6) motion may be converted to a motion for summary judgment, but requires that both parties be afforded the opportunity to present evidence pertinent under Civ. R. 56. The court did not permit or receive additional evidence, but, instead, treated defendants' motion as one to dismiss for failure to state a claim upon which relief may be granted. The court granted defendants' motion and plaintiffs appeal.

Assignments of Error

"1. The trial court erred in basing its judgment on the surmise or beliefs of the court without taking evidence to determine the true facts of the case.

"2. The trial court erred in determining, as a matter of law that defendants' refusal to terminate the life support system, in the treatment of Edna Marie Leach, was akin to suicide.

"3. The trial court erred in determining, as a matter of law, that the extreme remedy of introducing and maintaining life support systems during the course of treatment of Edna Marie Leach was in accordance with the rules and ethics governing the medical profession, and the mores of society.

"4. The trial court erred in determining, as a matter of law, that as the desires of Edna Marie Leach and her family were carried out, defendants' prior actions must be considered right and proper under the circumstances.

"5. The trial court erred in determining, as a matter of law, that the medical expenses incurred in the treatment of Edna Marie Leach were unavoidable.

"6. The trial court erred in determining, as a matter of law, that no action may lie against defendants for pain and suffering endured by plaintiffs' decedent during

the last 159 days of her life, nor are punitive damages recoverable.

"7. The trial court erred in determining, as a matter of law, that no genuine issue of material fact was presented in the instant case."

Plaintiffs' complaint is a seven-page document comprised of forty-five paragraphs arranged in five counts. A court may only grant a Civ. R. 12(B)(6) motion when it appears beyond doubt from the complaint that plaintiff can prove no set of facts which would entitle him to relief. *O'Brien* v. *Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St. 2d 242 [71 O.O.2d 223]. Under this standard we must reverse the trial court's decision.

Plaintiffs' action is generally based upon the notion that defendants acted wrongfully in placing Mrs. Leach on life-support systems and in maintaining her thereon contrary to the express wishes of Mrs. Leach and her family. A physician who treats a patient without consent commits a battery, even though the procedure is harmless or beneficial. *Lacey* v. *Laird* (1956), 166 Ohio St. 12 [1 O.O.2d 158]. While the patient's right to refuse treatment is qualified because it may be over-born by competing state interests, we believe that, absent legislation to the contrary, the patient's right to refuse treatment is absolute until the quality of the competing interests is weighed in a court proceeding. We perceive this right as the logical extension of the consent requirement and conclude that a patient may recover for battery if his refusal is ignored.

Not only must a patient consent to treatment, but the patient's consent must be informed consent. There is no legal defense to battery based on consent if a patient's consent to touching is given without sufficient knowledge and understanding of the nature of the touching. *Belcher* v. *Carter* (1967), 13 Ohio App. 2d 113 [42 O.O.2d 218]. The requirement of informed consent has its roots not only in the patient's right to privacy but also in the nature of the physician-patient relationship. The physician owes his patient a fiduciary duty of good faith and fair dealing which gives rise to certain specific professional obligations. These obligations include not only the duty to exercise due care and skill, but to fully inform the patient of his condition and to obtain the patient's informed consent to the medical treatment. 61 American Jurisprudence 2d (1981) 298, Physicians, Surgeons, Etc., Section 167.

While consent to a procedure is always required, courts have appreciated that circumstances may render the patient's consent impossible or impracticable to obtain. Where the patient is not competent to consent, an authorized person may consent in the patient's behalf. 42 Ohio Jurisprudence 2d (1960) 643, Physicians and Surgeons, Section 124; and 61 American Jurisprudence 2d (1981) 306, Physicians, Surgeons, Etc., Section 175. In other circumstances the patient's consent, though not expressly given, will be implied. Such circumstances must amount to more, however, than the mere inability of the patient to consent. See *Francis* v. *Brooks* (1926), 24 Ohio App. 136. Express consent to treat a specific condition through a surgical procedure may imply consent to all procedures necessary to achieve that end, *Harrison* v. *Reed* (Superior Court 1916), 21 Ohio N.P. (N.S.) 206, but not to procedures clearly not contemplated within the original consent, *Ober* v. *Hollinger* (App. 1933), 14 Ohio Law Abs. 514. The patient's consent will also be implied where the patient is unable to consent and there exists some emergency requiring immediate action to preserve the life or health of the patient. 42 Ohio Jurisprudence 2d (1960) 643, 644, Physicians and Surgeons, Section 124. The existence of consent, either express or implied, is a question of fact. *Wells* v. *Van Nort* (1919), 100 Ohio St. 101.

Plaintiffs allege that Mrs. Leach suffered a cardio-pulmonary arrest on July

27, 1980, was resuscitated, and after resuscitation remained in a chronic vegetative condition. Plaintiffs do not allege that the resuscitation efforts were improper or constituted a battery. Instead, the complaint alleges that Mrs. Leach was placed on life support systems on August 1, 1980, without the consent of Mrs. Leach or her family. From the complaint it would appear that August 1, 1980 was the day Mrs. Leach was moved to a private room from intensive care. If the facts as developed prove that Mrs. Leach was in fact placed on the machines as a part of the resuscitation efforts following her cardiac arrest, we presume that plaintiffs would consider such treatment proper since they do not question the propriety of the resuscitation efforts in their complaint. If the life support systems were first introduced as part of a properly authorized treatment, we feel that the trial court's ultimate conclusion was correct — barring significant improvement, and as long as Mrs. Leach was unconscious, these systems could only be disconnected by court order. In Ohio, at this time, the court system provides the only mechanism which can protect the interest of the doctor, the hospital, the patient, the family and the state, which can objectively weigh the competing interests in an emotionally charged situation, and which can insulate the participants from civil and criminal liability. Until such time as the legislature provides some more efficient means of protecting the rights of patients in Mrs. Leach's condition, we join those courts that require judicial authority for the termination of life-prolonging treatment of an incompetent patient. *Superintendent of Belchertown State School* v. *Saikewicz* (1977), 373 Mass. 728, 370 N.E. 2d 417; *In re Eichner* (1980), 73 A.D. 2d 431, 426 N.Y.Supp. 2d 517, as modified by *In re Storar* (1981), 52 N.Y.2d 363, 438 N.Y.Supp.2d 266, certiorari denied (1981), 454 U.S. 858. We also conclude that where the initial use of support systems was properly authorized, plaintiffs may not recover for ordinary and necessary medical expenses incurred during the time reasonably required to secure court authority for the termination of those support systems.

Plaintiffs allege, however, that Mrs. Leach was first placed on life support systems on August 1, 1980, when she was in a chronic vegetative state, and that this treatment was performed without consent of Mrs. Leach or her family. Plaintiffs allege that Mrs. Leach expressly advised defendants that she did not wish to be kept alive by machines. Absent an emergency defendants had an obligation to secure consent for Mrs. Leach's treatment from one authorized to act in her behalf, since Mrs. Leach was not capable of consenting, or by court order. If an emergency existed on August 1, 1980, when plaintiffs allege the life support systems were first employed, such an emergency would ordinarily give rise to an implied consent, but plaintiffs allege Mrs. Leach would have expressly refused to consent to such procedures in those circumstances. This court has held that where the parties contract expressly with regard to a particular procedure, an implied agreement cannot thereafter arise when the express agreement directly controverts the inclusion of any such implication. *Max* v. *Eaton* (App. 1933), 14 Ohio Law Abs. 516.

We recognize that doctors must be free to exercise their best medical judgment in treating a life-threatening emergency. 61 American Jurisprudence 2d (1981) 314, Physicians, Surgeons, Etc., Section 185. Carried to its extreme, however, the doctrine of implied consent could effectively nullify those privacy rights recognized in *In re Quinlan* (1976), 70 N.J. 10, 355 A.2d 647, certiorari denied *sub nom. Garger* v. *New Jersey* (1976), 429 U.S. 922; *Eichner, supra; Saikewicz, supra;* and *Leach, supra,* since a physician could circumvent the express wishes of a terminal patient by waiting to act until the patient was comatose and

critical. On the other hand, the prospect of refusing to act in an emergency because the patient at some time voiced vague wishes not to be kept alive on machines is equally unacceptable. We conclude that a patient has the right to refuse treatment, and that this refusal may not be overcome by the doctrine of implied consent. Before this refusal can controvert the implied consent of a medical emergency, however, it must satisfy the same standards of knowledge and understanding required for informed consent. A terminally ill patient fully advised of an impending crisis might then be able to refuse treatments which would only prolong suffering, while a patient afflicted with a disease which would be terminal in several years and who had generally expressed the desire to die peacefully would *not* be denied treatment for injuries sustained in an automobile crash. Both doctor and patient would then be protected from statements not made in contemplation of the specific circumstances and the specific medical treatment required. General statements by the patient could still be considered by a court, of course, in determining the wishes of a patient in a chronic vegetative condition.

The merits of plaintiffs' claims for relief depend upon the facts that are developed in this case. The existence and nature of any consent, the existence and nature of any refusal of treatment, the nature of the treatments before August 1, 1980, Mrs. Leach's condition on August 1, 1980, and the nature of the treatment on and after August 1, 1980, are all factual questions the answer to which determine whether plaintiffs are entitled to relief. Accordingly, defendants' motion to dismiss Count 1 for failure to state a claim should not have been granted.

Plaintiffs also allege that once Mrs. Leach was placed on life-support systems defendants failed to inform them of Mrs. Leach's true condition for a period of two months, failed to apprise the family of her course of treatments for that two-month period, and during the two-month period administered experimental drugs to Mrs. Leach without her family's consent for the purpose of observing the effects of these drugs on a person in Mrs. Leach's condition. We have already discussed the consent requirements. We have also discussed that under some facts *ordinary* and *necessary* medical expenses which plaintiff has actually paid for the treatment and care of the deceased may not be recoverable by plaintiff, but that would not preclude plaintiff's recovery for extraordinary or unnecessary medical expenses. These allegations raise questions of fact on both issues, and dismissal of these claims was improper.

Plaintiffs also claim that they were not informed of Mrs. Leach's condition or prognosis for a period of two months. Failure to disclose material information concerning a patient's condition may be actionable not only as malpractice, but under the appropriate circumstances may be an actionable misrepresentation as well. Annotation (1973), 49 A.L.R. 3d 501. As we have already discussed, a fiduciary relationship exists between the physician and patient. When the physician has knowledge of a fact concerning the patient's physical condition which is material to the patient, this fiduciary relationship may render the physician's silence fraudulent. *Nixdorf* v. *Hicken* (Utah 1980), 612 P. 2d 348; *Hudson* v. *Moore* (1940), 239 Ala. 130, 194 So. 147; *Nelson* v. *Gaunt* (1981), 125 Cal App. 3d 623, 178 Cal Rptr. 167; and *Adams* v. *Ison* (Ky. 1952), 249 S.W. 2d 791. The only Ohio case to consider the question found that an independent action in fraud had not been proved, and concluded that an action for mere misrepresentation required malpractice to be actionable. *Netzel* v. *Todd* (1926), 24 Ohio App. 219. The disparity in expertise between the physician and patient has increased dramatically since the *Netzel* case was decided, due to staggering technological and medical

advances. Because the importance of adequate disclosure increases as the patient is placed at a greater informational disadvantage, we join those courts holding that a physician's non-disclosure may give rise to an action in fraud independent of malpractice. Because the law has determined that a proper person may supply the consent for an incompetent person, 42 Ohio Jurisprudence 2d (1960) 643, Physicians and Surgeons, Section 124, and since that consent must be informed to be effective and to protect the patient, *Belcher* v. *Carter, supra* (13 Ohio App.2d 113 [42 O.O.2d 218]), we also conclude that when a patient becomes incompetent the physician's fiduciary obligations of full disclosure flow to the person acting in the patient's behalf.

From plaintiffs' allegations we cannot conclude beyond doubt that they can prove no set of facts which would entitle them to relief, nor can we conclude that their averments do not comply with Civ. R. 9(B). *Haddon View Investment Co.* v. *Coopers & Lybrand* (1982), 70 Ohio St. 2d 154 [24 O.O.3d 268]. We conclude that the trial court erred in granting a dismissal as to this claim.

Plaintiffs seek to recover damages for defendants' alleged conduct which invaded Mrs. Leach's right to privacy. The right to privacy is a right personal to the individual asserting it. *Martin* v. *F.I.Y. Theatre Co.* (C.P. 1938), 26 Ohio Law Abs. 67. This right lapses with the death of the person who enjoys it and the decedent's heirs may not recover for the invasion. *Young* v. *That Was The Week That Was* (C.A. 6, 1970), 423 F. 2d 265; 35 Ohio Jurisprudence 3d (1982) 594, Defamation and Privacy, Section 160. Accordingly, the dismissal of this cause of action was proper.

Plaintiffs also seek to recover for pain, suffering, and mental anguish for Mrs. Leach and for themselves. Plaintiffs allege that defendants administered treatments without proper consent and allege that some of those treatments were experimental. To the extent that plaintiffs can prove that this conduct was wrongful and caused pain and suffering beyond that which Mrs. Leach would have normally suffered from her condition, they state a claim for relief. 42 Ohio Jurisprudence 2d (1960) 661, Physicians and Surgeons, Section 141.

The trial court also concluded that plaintiffs had no cause of action for the mental anguish they suffered as a result of the alleged wrongs committed against Mrs. Leach. In reaching its conclusion, the court followed the law in Ohio at that time. Since then, the Supreme Court has significantly expanded the scope of recovery in this area. *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72. In light of that decision, we feel that the trial court's ruling is no longer a correct statement of the law in Ohio.

Plaintiffs also claim defendants caused an improper delay in effectuating the probate court order of December 18, 1980. The trial court concluded that a delay of nineteen days, in light of the conditions imposed by the probate court, was not unreasonable. This requires a determination of facts which were not properly before the court, and dismissal was improper.

Finally, plaintiffs seek to recover punitive damages. Because the trial court had found no other claims upon which relief could be granted, it concluded that there was no wrongdoing upon which to base an award of punitive damages. In light of our disposition of the foregoing issues, we conclude that this claim must be reinstated as well.

The decision of the trial court is reversed and the cause is remanded for further proceedings.

*Judgment reversed and cause remanded.*

MAHONEY, P.J., and BAYER, J., concur.

BAYER, J., of the Court of Common Pleas of Summit County, sitting by assignment in the Ninth Appellate District.