**ALLORE, Exr., Appellant,**

v.

**FLOWER HOSPITAL et al., Appellees.** ▮

[Cite as *Allore v. Flower Hosp.* (1997), 121 Ohio App.3d 229.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–96–329.

Decided June 27, 1997.

*Steven P. Collier* and *Janine T. Avila*, for appellant.

*James E. Brazeau, James R. Knepp II* and *Nancy D. Moody*, for appellees.

MELVIN L. RESNICK, Presiding Judge.

This is an appeal from the grant of a motion for summary judgment entered by the Lucas County Court of Common Pleas in favor of defendants-appellees, Flower Hospital and Ahed T. Nahhas, M.D. Plaintiff-appellant, Mary P. Allore, individually and in her capacity as executor of the estate of Frank R. Allore, appeals that judgment and asserts the following assignments of error:

"The trial court erred in granting appellees' motion for summary judgment on Mary P. Allore's medical negligence claim because the court judged the credibility of appellant's medical expert and relied solely on the testimony of appellees'

experts on the ultimate issue of liability, which reliance invaded the province of the jury.

"The trial court erred in granting appellees' motion for summary judgment and denying Mary P. Allore's motion for partial summary judgment on her battery claim because Frank P. Allore gave appellees neither his express or implied consent to intubation and mechanical ventilation."

Frank J. Allore was diagnosed as having asbestosis in 1976. His primary physician from that date until August 24, 1994, the date of his death, was Nasir Ali, M.D., a pulmonologist.

Frank Allore was admitted to Flower Hospital in June 1994. At that time, he executed a living will and a durable power of attorney for health care. Under the terms of the living will, Frank Allore directed his attending physician to administer *no* "life-sustaining treatment" in the event that the decedent suffered from a "terminal condition" or was in a "permanently unconscious state." Pursuant to R.C. 2133.03, the living will required that the terms of the will did not become operative unless Allore's attending physician and one other physician determined that Allore was suffering from a terminal condition or was in a permanently unconscious state. Frank Allore designated Mary Allore as his attorney-in-fact to make his health care decisions if he was unable to do so. Both Flower Hospital and Dr. Ali were aware of the existence of the living will and power of attorney.

In June 1994, Allore was treated and released from the hospital. On August 14, 1994, the decedent was admitted to Flower Hospital with pulmonary problems associated with his asbestosis. He was discharged on August 18, 1994.

However, on August 22, 1994, Frank Allore was again admitted to Flower Hospital with symptoms indicating tracheal bronchitis, severe chronic respiratory failure, and resolving congestive heart failure.

Called in as a consultant, Dr. Nahhas, a cardiologist, examined Allore, ordered various medications for the treatment of decedent's symptoms, and had Allore transferred to the coronary care unit. Neither Dr. Nahhas nor the nurse, Kim Perry, who cared for Frank Allore from 11:30 p.m. on August 22, 1994 to approximately 1:50 a.m. on August 24, 1994, knew of the existence of the living will and power of attorney.

During his last hospitalization, Frank Allore's chart did not contain a "Do Not Resuscitate" order. Rather, upon his admission, Dr. Ali entered the following relevant orders into Frank Allore's chart:

"23. In the event of cardiac standstill, ventricular fibrillation or respiratory arrest, resuscitation measures are to be initiated immediately using ACLS protocols (With attention to written code status orders).

"24.  \* \* \*

"B.  \* \* \*

"The physician will be notified immediately of any emergency interventions by nursing personnel."

About 12:20 a.m. on August 23, 1994, Frank Allore told Nurse Perry that he was having difficulty breathing. The nurse noticed that Allore was dusky in color and discovered some pulmonary edema. Nurse Perry increased Allore's oxygen and had his arterial blood gases analyzed. After receiving the results of the test, she called Dr. Ali and informed him of Allore's condition. Dr. Ali did not give Nurse Perry any orders concerning treatment of his patient.

Ten minutes later, after again checking the patient, Nurse Perry called Dr. Nahhas and informed him that Frank Allore was in respiratory distress. While admitting frustration with Dr. Ali's failure to provide her with any type of treatment orders, Nurse Perry believed the acute pulmonary edema was "a cardiac problem, therefore, you go to the cardiologist." Upon hearing the results of the arterial blood gas tests, Dr. Nahhas determined that Allore should be intubated and then mechanically ventilated. By the time, 1:30 a.m., Nurse Perry called appellant regarding Allore's physical decline, she noted that the decedent's condition had deteriorated to the point where he could not make his wishes known to her.

At 1:50 a.m., Frank Allore was transferred to the Intensive Care Unit and intubated. Dr. Nahhas learned of the decedent's living will later that day and orders eliminating intubation and ventilation were added to Allore's chart. At about 12:10 a.m. on August 24, 1994, Frank Allore died.

On August 18, 1995, appellant filed a complaint containing four claims for relief. On behalf of the decedent, the complaint alleged that, by disregarding his wishes as set forth in his living will, appellees were negligent in their care of Frank Allore. The complaint also set forth a count based on battery, i.e., that the intubation and ventilation were performed without either Frank Allore's or appellant's consent. Appellant also asserted her own claims for loss of consortium and "severe emotional distress."

Appellant filed a motion for partial summary judgment on the battery claim only. She supported her motion with the affidavit of Dr. Ali, with her own deposition, and with the depositions of Nurse Perry and Dr. Nahhas. In his affidavit, Dr. Ali stated that, from his review of the hospital records, "it appears Nurse K. Perry went behind my back to obtain an order for intubation and mechanical ventilation." The doctor concluded that this act was a departure from accepted medical/nursing standards and the proximate cause of the "intubation

and mechanical ventilation against Frank Allore's express wishes causing him additional pain and suffering."

Appellees then filed a motion for summary judgment on all of appellant's claims for relief. Appellees argued that no genuine issue of material fact existed on the question of negligence because the intubation/ventilation of Frank Allore was not a deviation from the accepted standards of physician and/or nursing care. In support of this argument, appellees filed the affidavit of James Tito, D.O., a pulmonologist, who reviewed the materials offered in support of appellant's motion for summary judgment as well as the hospital records pertaining to the care of Frank Allore just prior to his death. Dr. Tito opined:

"4. The only order on the Flower Hospital chart for the August 22 admission regarding resuscitation before Mr. Allore's intubation was Dr. Ali's order for full resuscitation pursuant to ACLS protocol. This protocol would require intubation under the circumstances which existed when Mr. Allore was intubated.

"Defendant Flower Hospital, Ahed T. Nahhas, M.D., and their agents, servants and employees, and specifically nurse Kim Perry, completely complied with accepted standards of care in their treatment of Frank Allore. The standard of care required nurse Kim Perry to do precisely what she did in contacting Dr. Ali and Dr. Nahhas when Mr. Allore was in respiratory distress, and then acting upon the standing order of Dr. Ali and the specific order of Dr. Nahhas, to intubate Mr. Allore. All of the opinions stated in this affidavit are opinions I hold and state to a reasonable medical probability."

In her affidavit, Sue Dill, R.N., who is also an attorney, asserted that Frank Allore's living will and durable power of attorney for health care were not applicable because he was not terminally ill or in a persistent vegetative state, as certified by two physicians. She reiterated that the hospital, the doctor, and the nurse acted within accepted standards in their care and treatment of Allore.

In addition, appellees pointed out that a battery did not occur in this instance because the facts demonstrated that an emergency situation existed and consent to making resuscitative efforts was, therefore, implied. Finally, appellees contended that appellant's remaining claims were derivative and/or not recognized by Ohio law and, accordingly, must fail as a matter of law.

The trial court denied appellant's motion for partial summary judgment and granted appellees' summary judgment motion. This appeal followed.

In her first assignment of error, appellant contends that the trial court erred in granting appellees' motion for summary judgment on the medical negligence claim because genuine issues of material fact exist on the questions of whether Dr. Nahhas and Nurse Perry deviated from the accepted standards of care for

their professions. Specifically, appellant argues the trial court impermissibly determined the credibility of the witnesses in reaching her judgment.

In order to grant a motion for summary judgment, the court must find, construing the evidence most strongly in favor of the nonmoving party, that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

Prior to any consideration of appellant's specific argument, we must discuss the impact of the Ohio Supreme Court's decision in *Anderson v. St. Francis–St. George Hosp., Inc.* (1996), 77 Ohio St.3d 82, 671 N.E.2d 225, on appellant's medical negligence claim. The *Anderson* court considered the issue of whether the resuscitation of a patient against his or her wishes, as expressed in a "No Code Blue," is a compensable injury. *Anderson v. St. Francis–St. George Hosp., Inc.*, 77 Ohio St.3d at 83, 671 N.E.2d at 226–227. The court, in analyzing the elements of negligence, found that the "harm" that was proximately caused by medical professional's breach of duty in a prolongation-of-life case was the "benefit of life," a harm which courts have repeatedly refused to compensate. *Id.* at 85, 671 N.E.2d at 227–228. As a result, the *Anderson* court concluded that there are some breaches of duty that affect the lives of others for which there should be no monetary compensation. *Id.* at 86, 671 N.E.2d at 228–229. The court thus found that the only damages compensable in such a case were those due directly to the battery against the patient. *Id.* at 87, 671 N.E.2d at 229.

In the present case, appellant seeks damages for the prolongation of life, a cause of action that does not exist in Ohio. *Id.* at 82, 671 N.E.2d at 226. Therefore, recovery, if any, on appellant's medical claim is limited to those damages resulting from the alleged battery.

Moreover, we find the trial court did not impermissibly judge the credibility of appellant's expert witness, Dr. Ali.

The credibility of the witnesses and weight to be accorded testimony are matters to be determined by the trier of fact and, consequently, are wholly inappropriate in the consideration of a motion for summary judgment. *Studniewski v. Krzyzanowski* (1989), 65 Ohio App.3d 628, 584 N.E.2d 1297; *Aglinsky v. Cleveland Builders Supply Co.* (1990), 68 Ohio App.3d 810, 817, 589 N.E.2d 1365, 1369–1370. Nevertheless, a summary judgment motion can be overcome only by specific and provable facts—not mere allegations. Evidence of a possible inference is insufficient. *Jackson v. Alert Fire & Safety Equip. Inc.* (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031–1032; *Cox v. Commercial Parts & Serv.* (1994), 96 Ohio App.3d 417, 421, 645 N.E.2d 123, 125.

"Medical claims" are now governed by statute, specifically, R.C. 2305.11. *Rome v. Flower Mem. Hosp.* (1994), 70 Ohio St.3d 14, 635 N.E.2d 1239. The statute defines a "medical claim" as:

"(3) * * * any claim that is asserted in any civil action against a physician, podiatrist, or hospital, against any employee or agent of a physician, podiatrist, or hospital, or against a registered nurse, midwife, or physical therapist, and that arises out of the medical diagnosis, care, or treatment of any person. 'Medical claim' includes derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person and a claim that is asserted in a civil action against a hospital and that is based on negligent credentialing."

■ When a "medical claim" is based on the alleged negligence of the health professional, the plaintiff must demonstrate that the professional deviated from the relevant standard of conduct. *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 579–580, 613 N.E.2d 1014, 1020–1022. The standard must be proven by expert testimony. *Id.*

■ Here, appellant was required to offer specific, operative facts creating a genuine issue of material fact on the question of whether, by resuscitation of the decedent, Dr. Nahhas and Nurse Perry deviated from accepted standards of care for, respectively, physicians and nurses. *Id.* Dr. Ali opined that Nurse Perry sought to circumvent his failure to order intubation and ventilation by "going behind his back" to Dr. Nahhas and that this act is a deviation from accepted nursing standards. There are no facts in the record to support this inference. Instead, even in viewing the materials in support of and in opposition to the motion for summary judgment in a light most favorable to appellant, reasonable minds could only conclude that no question of fact exists on the issue of whether Nurse Perry followed the admission orders of Dr. Ali by informing him of the emergency situation and, when he failed to respond, by calling Dr. Nahhas for treatment orders. Dr. Nahhas, who was not informed of the existence of the living will and durable power of attorney, simply followed the standard of care employed in a situation where life-saving measures are necessary. Accordingly, the trial court did not err in granting summary judgment on the issue of negligence as a matter of law and appellant's first assignment of error is not well taken.

Appellant's second assignment of error challenges the grant of summary judgment on her battery claim. This assignment of error is without merit.

In *Anderson v. St. Francis–St. George Hosp.* (1992), 83 Ohio App.3d 221, 225, 614 N.E.2d 841, 844, the First District Court of Appeals set forth the law controlling the disposition of this assignment of error:

"Concerning the substantive law of this dispute, the rule is that a person commits a battery when he unlawfully strikes or touches another. *Green v. Drungold* (1950), 60 Ohio Law Abs. 445, 447, 101 N.E.2d 906, 908. In a medical setting, when a physician treats a person without consent, the doctor has committed a battery. *Leach v. Shapiro* (1984), 13 Ohio App.3d 393, 395, 13 OBR 477, 479, 469 N.E.2d 1047, 1051. Moreover, under the doctrine of respondeat superior, any person who controls the physician in a principal-agent relationship is liable for unlawful acts by the physician that are within the scope of that relationship. *Klema v. St. Elizabeth's Hosp.* (1960), 170 Ohio St. 519, 527, 11 O.O.2d 326, 330, 166 N.E.2d 765, 771.

"In contrast, a physician's acts are lawful when the patient expressly consents prior to medical treatment. *Leach, supra,* 13 Ohio App.3d at 395, 13 OBR at 479, 469 N.E.2d at 1051. Medical treatment also will be lawful under the doctrine of implied consent when a medical emergency requires immediate action to preserve the health or life of the patient. *Leach, supra,* 13 Ohio App.3d at 395, 13 OBR at 479, 469 N.E.2d at 1052, citing *Wells v. Van Nort* (1919), 100 Ohio St. 101, 125 N.E. 910. A potential patient may, however, expressly refuse treatment. *Leach, supra,* 13 Ohio App.3d at 397, 13 OBR at 481, 469 N.E.2d at 1053. If so, even in an emergency, any medical treatment is a battery. *Id.* at 396, 13 OBR at 480, 469 N.E.2d at 1052."

Appellant urges that *Leach* stands for the following propositions: (1) A patient has the right to refuse treatment and such refusal cannot be overcome by implied consent, and (2) even in emergency situations, consent is implied only where the patient's informed consent is obtained and such consent satisfies the legal requirements of informed consent. While we agree with appellant's first proposition, we disagree with her second proposition.

In *Leach,* the court considered a situation where the decedent and her family expressly informed her health care providers of the fact that she did not wish to be placed on life support systems. During her hospital stay, Leach suffered a respiratory-cardiac arrest. Although she survived, Leach remained in a chronic vegetative state and was placed on life support systems. Her husband filed suit seeking to terminate the life support measures; this request was granted, and Leach died. Her husband then filed an action seeking damages for the time the decedent was on the life support systems, asserting lack of consent to the life support procedures. *Id.,* 13 Ohio App. 3d at 394–395, 13 OBR at 478–480, 469 N.E.2d at 1050–1052.

Because the decedent expressly refused life support measures, the *Leach* court determined that the refusal could not be overcome by implied consent. *Id.,* 13 Ohio App.3d at 397, 13 OBR at 481–482, 469 N.E.2d at 1053–1054. The court held, however, that the refusal itself must be an informed refusal. *Id.* These are

the central holdings on the page cited by appellant. Nevertheless, they are not applicable in the instant case.

■ While the continued viability of *Leach* on this particular issue is questionable due to the enactment of R.C. Chapter 2133 and the holding in *Anderson, supra,* we find that *Leach* can be distinguished from the present case. In *Leach,* it was undisputed that the decedent's health care providers were fully apprised of her wishes. Here, we have no evidence suggesting that Dr. Nahhas and/or Nurse Perry were aware of Frank Allore's "refusal" of treatment as expressed in his living will and durable power of attorney for health care. The undisputed evidence offered by appellees shows that Frank Allore signed a consent form for treatment when admitted to the hospital, that his attending physician entered orders allowing life support measures in an emergency situation, and that such an emergency occurred. Thus, appellees demonstrated that no genuine issue of material fact existed as to implied consent on the part of Frank Allore to the intubation and ventilation.

On the other hand, Dr. Ali's affidavit does not state that he informed anyone, including Dr. Nahhas or Nurse Perry, of the decedent's wishes regarding his health care. Rather, he admits that he remained silent on this issue and places a duty of inquiry as to the decedent's wishes on Nurse Perry. Even in viewing the evidence in a light most favorable to appellant, this "fact" is insufficient to create a genuine issue of material fact as to whether Nurse Perry and Dr. Nahhas were aware of Frank Allore's rejection of resuscitation measures.

■ Moreover, and of equal importance, the only damages recoverable by appellant are those caused directly by the alleged battery itself. *Anderson v. St. Francis–St. George Hosp., Inc.,* 77 Ohio St.3d at 87, 671 N.E.2d at 229. In her complaint, appellant asked for damages for unwanted medical care, unnecessary medical bills, the unnecessary conscious pain and suffering of the decedent, and the mental anguish and severe emotional distress suffered by Frank Allore prior to his death. These damages all relate to the damages incurred due to the prolongation of Frank Allore's life and are not recoverable. *Id.* at 86–87, 671 N.E.2d at 228–229. Appellant neither requested damages arising from the act of intubation/ventilation itself nor for nominal damages for the battery.

For these reasons, appellant's second assignment of error is found not well taken.

The judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.

*Judgment affirmed.*

HANDWORK and SHERCK, JJ., concur.