OPINION
Plaintiff-appellant, Rosemary Phelps, appeals a decision rendered by the Columbiana County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Mark Swift, D.O. (Dr. Swift), which dismissed her civil suit against Dr. Swift.
On or about December 8, 1998, appellant had a domestic argument with her husband, after which she threw a lit match onto her bed. After putting out the match, appellant called a friend to come and sit with her until she calmed down. Appellant's friend told her that she would have appellant committed. Thereafter appellant became upset, left her house, and fled to the woods near her home where she spent the night outside. A search party was formed to search for appellant.
The next morning as she was walking home, appellant was picked up by a member of the search party and taken to East Liverpool Hospital. Dr. Swift treated appellant in the emergency room and later transferred appellant to Northside Hospital in Youngstown due to her medical insurance coverage.
On December 1, 1999, appellant filed a complaint against East Liverpool City Hospital, Dr. Swift, and Mary Ellen Billie. Appellant alleged several causes of action against the defendants including: 1) deprivation of her Fourteenth Amendment Rights, 2) false imprisonment, 3) battery, and 4) negligence. Appellant also filed a similar complaint against Tri County Ambulance, Mary Ely, and John Conley. The defendants filed answers denying the allegations set forth in appellant's complaints. The two cases were consolidated January 26, 2000.
On May 8, 2000, Dr. Swift moved for summary judgment. Appellant filed a brief in opposition to summary judgment. The trial court entered summary judgment in favor of Dr. Swift on June 8, 2000. Appellant filed stipulations of dismissal against all other defendants in the instant action and filed timely notice of appeal from that order on July 3, 2000.
As with the proceedings below, appellant is pursuing this appeal prose. In her brief, appellant presents nine assignments of error. At the outset, it must be noted that appellant's brief does not conform to the requirements of App.R. 16. Appellant's brief lacks any syllogistic premise followed by an articulable analysis. Nonetheless, in the interests of justice, we will attempt to address the core legal issues presented by appellant's assignments of error.
In her first two assignments of error, appellant essentially argues that the trial court erred in its summary judgment order by failing to consider the attachments to her brief in opposition to summary judgment.
The Ohio Supreme Court set out the standard for considering motions for summary judgment in Dresher v. Burt (1996), 75 Ohio St.3d 280 . The court stated:
 "We hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis sic.) Id. at 293.
After reviewing the evidence in a light most favorable to appellant, a thorough review of the record shows that appellant's arguments are unsubstantiated[1]. With regards to appellant's first two assignments of error, appellant has misinterpreted certain legal terms. For example, in its summary judgment order the trial court stated:
 "Other attachments such as quotations from various treatises, case law, et cetera, are common attachments to motions for summary judgments, and are made to support the Plaintiff's legal theories, but are not accepted by this Court as evidence in support of her positions."
Appellant argues that this language illustrates that the trial court failed to consider these attachments to her brief in opposition to summary judgment. However, the trial court did not fail to consider these attachments, rather it ruled that these attachments could not be considered as evidentiary material in opposition to a successful claim of summary judgment.
The trial court's judgment illustrates that it refined its summary judgment review to the documentary evidence listed in Civ.R. 56(C), which states in pertinent part:
 "Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits * * * show that there is no genuine issue of material fact * * *. No evidence or stipulation may be considered except as stated in this rule." (Emphasis added.)
The attachments to appellant's brief may have represented support of her legal theories, however, they did not qualify as the substantive evidentiary material enumerated in Civ.R. 56(C). For example, appellant attached numerous documents such as copies of cases and excerpts from treatises which state what appellant believes to be a correct statement of the law. However, appellant failed to produce any type of the factual evidentiary material enumerated in Civ.R. 56(C) to support these legal theories.
Appellant also argues that she properly supported her motion in opposition to summary judgment by attaching affidavits to her brief in opposition to summary judgment. However, a review of the record indicates that the trial court did not err in disqualifying appellant's affidavits, as these affidavits clearly failed to comply with the form requirements set forth for affidavits in Civ.R. 56(E) which provides in pertinent part:
 "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated in the affidavit."
Appellant's purported affidavits are not affidavits within the meaning of Civ.R. 56(E). Civ.R. 56(E) clearly provides that affidavits must be based upon a factual nature and that the affiant must have personal knowledge to testify to the matters attested to in the affidavits. Appellant's affidavit does not set forth matters of a factual nature but rather is a jumbled together argument of what she again believes the law to be rather than an affidavit based upon facts. In addition, appellant's husband swears to the contents of appellant's memorandum based upon his belief that everything his wife set forth in the affidavit is true, however, in addition to the affidavit not being based in a factual nature, appellant's husband lacks the personal knowledge to testify to such matters. Although the court allows great latitude to the unrepresented party in a pro se action, the court is not required to totally throw the Rules of Civil Procedure out the window. 4262 RobbinsAve. Restaurant Co. v. Slanco (Nov. 22, 1991), Trumbull App. No. 89-T-4274, unreported, 1991 WL 244648 at *6.
Therefore, appellant's first and second assignments of error are without merit.
In her third assignment of error, appellant argues that the trial court erred in not accepting evidence of her chronic illness. A review of the record shows that the trial court considered appellant's medical documents in ruling on Dr. Swift's motion for summary judgment. However, to the extent these items were not considered, these items were irrelevant to Dr. Swift's motion for summary judgment. These documents had no bearing on the legal causes of action at issue in the instant case. Therefore, even assuming that the trial court erred in rejecting these documents, any such error constituted harmless error.
Therefore, appellant's third assignment of error is without merit.
In her fourth assignment of error, appellant essentially argues that the trial court erred in granting Dr. Swift summary judgment as to her medical malpractice claim. Appellant argues that her claim for medical malpractice stems from matters requiring only common, not expert knowledge.
In Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, the Ohio Supreme Court set forth the test for medical malpractice in Ohio:
 "In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things." Id. at paragraph 1 of syllabus.
In Hoffman v. Davidson (1987), 31 Ohio St.3d 60, 62, the court held that an affidavit of a treating physician is a legally sufficient basis upon which to grant a motion for summary judgment in a medical malpractice action absent any opposing affidavit of a qualified expert witness for the plaintiff. Failure to provide the recognized standards of the medical community is fatal to the presentation of a prima facie case of medical malpractice by the plaintiff. Roguff v. King (1993), 91 Ohio App.3d 438,446.
In his motion for summary judgment, Dr. Swift pointed to appellant's failure to produce expert testimony establishing the relevant standard of care in the medical community, how he deviated from the standard of care, and that any alleged deviations from the standard of care caused injury to appellant. Dr. Swift attached his own affidavit stating that he is a physician licensed to practice medicine in this state; that he spends 100 percent of his professional time in the active clinical practice of medicine, specifically emergency medicine; that he rendered certain professional services to appellant; and that, based upon his education, training, and experience, he complied with acceptable standards of care in his treatment of appellant.
Appellant failed in her reciprocal burden imposed by Civ.R. 56(E) to provide the court with an opposing affidavit to establish a genuine issue of material fact. Appellant essentially argues that Dr. Swift committed medical malpractice by treating appellant for emergency hospitalization prior to ensuring that the sheriff had issued a written statement of hospitalization pursuant to R.C. 5122.10. Appellant failed to present any valid opposing affidavits or evidence pursuant to Civ.R. 56(C) and (E) which rebutted Dr. Swift's affidavits that he acted within the standard of care.
Therefore, appellant's fourth assignment of error is without merit.
In her fifth assignment of error, appellant argues that the trial court erred by ruling that she had not presented evidence demonstrating a genuine issue of material fact as to the tort of informed consent.
The Supreme Court of Ohio discussed the tort of informed consent inNickell v. Gonzalez (1985), 17 Ohio St.3d 136:
 "The tort of lack of informed consent is established when:
 "(a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;
 "(b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and
 "(c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy." Id. at syllabus.
A review of the record also shows that the trial court did not err in granting Dr. Swift summary judgment on appellant's informed consent claim. As noted by the trial court, there is no allegation in appellant's complaint that she was submitted to treatment for which she was not informed of the risks. Rather, appellant's contentions over lack of consent stem from her battery claim, which will be addressed herein.
Therefore, appellant's fifth assignment of error is without merit.
In her sixth assignment of error, appellant argues the trial court erred in determining that her husband's consent qualified as valid consent for the purposes of authorizing medical treatment on her. Appellant argues that Dr. Swift treated her without her consent, and such treatment constituted a battery on her person.
In order to recover for a claim of battery, plaintiff bears the burden of showing an intentional, unconsented-to touching. Anderson v. St.Francis-St. George Hosp. Inc. (1996), 77 Ohio St.3d 82, 84. While consent to a medical procedure is always required, the courts have appreciated that circumstances may render the patient's consent impossible or impracticable to obtain. Leach v. Shapiro (1984), 13 Ohio App.3d 393,395. "Where the patient is not competent to consent, an authorized person may consent in the patient's behalf." Id.
A review of the record shows that Dr. Swift either touched appellant, or had tests performed on appellant at his direction. Despite appellant's assertions to the contrary, it appears that she was not competent to consent to treatment, and as such, the consent form which her husband signed operated as valid consent on her behalf. Although Dr. Swift's report recognized that appellant was neurologically intact, Dr. Swift also diagnosed appellant with acute psychosis. Psychosis is defined as:
 "[A] mental disorder characterized by gross impairment in reality testing as evidenced by delusions, hallucinations, markedly incoherent speech, or disorganized and agitated behavior without apparent awareness on the part of the patient of the incomprehensibility of his [her] behavior * * *. [T]he term is also used in a more general sense to refer to mental disorders in which mental functioning is sufficiently impaired as to interfere grossly with the patient's capacity to meet the ordinary demands of life. * * *." Dorlands Illustrated Medical Dictionary
(28 Ed. 1994) 1383-1384.
A review of the record supports Dr. Swift's diagnosis and indicates that appellant was laboring in or under the effects of a psychosis episode such as to preclude competency. In her complaint, appellant stated that as a result of an alleged domestic argument, she threw a lit match on her bed. In Dr. Swift's medical report, the doctor also stated that appellant's friend had notified him that appellant had attempted to burn down her house. Appellant admitted in her pleadings that when she was confronted with the irrationality of her acts, she fled into the woods, in the middle of December, where she spent the night without benefit of any blanket or shelter and spoke to the animals. Such actions when viewed in their totality tend to raise serious questions of appellant's perception of reality and her capacity to consent to treatment. Because appellant was incompetent to sign the consent for treatment form, the trial court did not err in accepting her husband's signature on her behalf.
Therefore, appellant's sixth assignment of error is without merit.
In her seventh assignment of error, appellant essentially argues that the trial court erred in determining that Dr. Swift's failure to verify that the sheriff had issued the hospital a written statement of hospitalization as required under R.C. 5122.10 did not constitute a deprivation of her rights under the Fourteenth Amendment.
As noted by the trial court, denial of due process under the Fourteenth Amendment applies only to the state and its public political subdivisions and not to private individuals. There is no evidence on record that Dr. Swift was an employee or agent of the state of Ohio or any other public entity or body at the time the alleged incident took place. Because appellant failed to show state action, the trial court did not err in granting summary judgment on her Fourteenth Amendment claim.
Therefore, appellant's seventh assignment of error is without merit.
In her eighth assignment of error, appellant argues that the trial court erred in ruling that Dr. Swift had not confined appellant against her will. Appellant argues she was under the impression that she was in the hospital under "sheriff papers" and was not free to leave.
The Ohio Supreme Court set forth the requisite elements of false imprisonment in Feliciano v. Kreiger (1977), 50 Ohio St.2d 69, 71:
 "[T]o confine one intentionally without lawful privilege and against his consent within a limited area for any appreciable time, however short."
To prove the element of confinement one must show force or coercion, not simply a submission to the verbal direction of another. Honesty v.Leader Discount Drug Stores (Oct. 1, 1987), Cuyahoga App. No. 52798, unreported, 1987 WL 17898 at *2.
Once again appellant has failed to show any facts that would lead a reasonable person to believe that Dr. Swift falsely imprisoned her. As noted supra, Dr. Swift received proper consent prior to treating appellant. In addition, as noted by the trial court, Dr. Swift's medical diagnosis of appellant shows that she called her insurance company to attempt to get permission for her to be transferred to Northside Hospital. This information tends to show that appellant was not confined against her will.
Therefore, appellant's eighth assignment of error is without merit.
In her final assignment of error, appellant essentially argues that the trial court erred in failing to review supportive documentation in support of her damages. The arguments appellant raises under this assignment of error have already been raised and addressed within this opinion.
For the foregoing reasons, appellant's ninth assignment of error is without merit.
Based on aforementioned reasons, the judgment of the trial court is hereby affirmed.
 ______________ DONOFRIO, J.
Waite, J., concurs, DeGenaro, J., concurs.
[1] As a preliminary matter, Dr. Swift met his initial summary judgment burden by establishing the absence of a genuine issue of material fact as to all of appellant's claims.