DECISION
{¶ 1} Plaintiff-appellant/cross-appellee John P. Wiley appeals the judgment entered by the Hamilton County Court of Common Pleas in favor of defendants-appellees/cross-appellants, the Good Samaritan Hospital and Said Nayebi, M.D., in a malpractice action. For the following reasons, we affirm the judgment of the trial court and dismiss the cross-appeal.
 {¶ 2} In 1996, Wiley filed his medical malpractice action against Good Samaritan Hospital, Ruth Kremchek, executrix of the estate of Edward J. Kremcheck, M.D., and Said Nayebi. The claim against Ruth Kremchek was later dismissed without prejudice. Good Samaritan and Nayebi filed motions for summary judgment on the basis that the applicable statute of limitations had expired. The trial court granted the motions, and an appeal followed. On appeal, this court reversed the entry of summary judgment and remanded the cause to the trial court for further proceedings.[1]
 {¶ 3} Following the remand, Good Samaritan Hospital moved to dismiss the action on the basis of laches. Good Samaritan Hospital also moved to dismiss the action for failure to establish an agency or employment relationship between Nayebi and the hospital, or, in the alternative, for failure to state a claim upon which relief could be granted.
 {¶ 4} In February 2000, the trial court granted Good Samaritan Hospital's motion to dismiss on the basis of laches, and it granted summary judgment to Good Samaritan Hospital. The trial court determined that summary judgment was appropriate with respect to the malpractice claim because even though a question of material fact with respect to whether Nayebi was an agent of Good Samaritan Hospital existed, no evidence had been presented demonstrating that Nayebi had performed the surgery or that Nayebi knew of should have known that the placement of a traction wire in Wiley's growth plate was improper. Based on this and the fact that the purported surgeon (Dr. Edward Kremchek) was deceased and that essential records were no longer available, the trial court determined that Good Samaritan, which could only have been negligent through the acts of another, would have been materially prejudiced by allowing the action to go forward. The trial court's entry included Civ.R. 54(B) language that "there [was] no just cause for delay."
 {¶ 5} Subsequently, Nayebi moved for a dismissal based upon the doctrine of laches. The trial court denied the motion on the ground that there had not been a sufficient showing of material prejudice to Nayebi, because Nayebi's motion had not articulated the prejudice and because he was the author of the operative notes and was able to testify on his own behalf.
 {¶ 6} In 2001, Wiley amended his complaint to include actions for battery and fraud against Nayebi and Good Samaritan Hospital. The case proceeded to a jury trial. After Wiley presented his evidence, he moved for a directed verdict on the issue of battery. Nayebi responded by moving for a directed verdict on the issues of liability and causation. He also sought to exclude testimony from Wiley's experts. Nayebi further moved for a directed verdict on the issues of fraud and battery. Good Samaritan Hospital also moved for a directed verdict on the issues of fraud and battery. The trial court denied Wiley's motion for a directed verdict on the issue of battery, and denied Nayebi's motion for a directed verdict on the issues of liability and causation. But the court granted Nayebi and Good Samaritan Hospital a directed verdict on battery and fraud. The case then proceeded to trial so that Nayebi could defend against the sole remaining claim of medical negligence. After Nayebi rested, he renewed his motion for a directed verdict, which the trial court denied. The jury then returned its verdict in favor of Nayebi.
 {¶ 7} In the first assignment of error, Wiley now asserts that the trial court erred in directing a verdict for Nayebi and Good Samaritan Hospital on the issues of battery and fraud.
 {¶ 8} Pursuant to Civ.R.50(A)(4), where the trial court construes all the evidence presented at trial most strongly in favor of the nonmoving party and determines that reasonable minds can come to but one conclusion on the evidence submitted and that conclusion is adverse to the nonmoving party on an issue, the court must withhold that issue from the jury and direct a verdict in favor of the moving party. But where there is sufficient evidence to permit reasonable minds to reach different conclusions on the issue, the trial court must submit the issue to the jury.[2]
 {¶ 9} In order to prevail on a claim of fraud, Wiley was required in this case to demonstrate all of the following elements at trial: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by reliance."[3]
 {¶ 10} The premise of Wiley's fraud claim was that Good Samaritan Hospital and Nayebi had knowingly withheld the fact that Nayebi was not licensed to practice medicine in Ohio in 1971, when Wiley sought treatment at Good Samaritan Hospital after falling off a horse and injuring his left leg when he was twelve years old. Wiley asserted that Nayebi had performed surgery on him in 1971 at Good Samaritan Hospital. Wiley maintained that, during the surgery, Nayebi misplaced a traction wire in Wiley's growth plate, causing Wiley to have a deformity in his left leg. Nayebi and Good Samaritan Hospital denied that Nayebi had performed the surgery. Nayebi asserted that he was merely a resident on call at the hospital who assisted Dr. Kremcheck (Wiley's attending physician) in the operating room during Wiley's surgery.
 {¶ 11} During the presentation of Wiley's case, Wiley presented testimony from himself, his wife, and two doctors. Wiley testified that he was unable to remember the surgery at Good Samaritan Hospital in 1971. He also testified that he injured the same leg one year later, in 1972, after falling at a local arena. Wiley's wife testified about the extent of her husband's pain and damages. Wiley's wife did not know him when he was injured in 1971.
 {¶ 12} Dr. Keith Starks testified that he treated Wiley in 1995 for mild chronic arthritis, which had been aggravated by a deformity in his left tibia. Dr. Starks testified that, in his medical opinion, the placement of the traction wire came close to or went through Wiley's growth plate. Dr. Bryant Bloss testified that the traction wire was placed through Wiley's upper tibia and growth plate, thereby causing Wiley's deformity. In Dr. Bloss's opinion, Nayebi had a duty to prevent the traction wire from being placed in Wiley's growth plate. Dr. Bloss testified that a resident physician was a rotating physician, and that the attending physician, not the resident, had the ultimate control over how the patient was treated.
 {¶ 13} Following the presentation of the testimony, certain stipulations were entered into the record. Of relevance here, the parties stipulated that Dr. Kremcheck and Dr. Kremcheck's partner, Dr. Scott Starks, were deceased. It was also stipulated that because the case was over 30 years old, the medical records recovered from Good Samaritan relating to Wiley's 1971 injury were not complete and that x-rays and other portions of the medical records had been destroyed during the regular course of business at Good Samaritan. Wiley's medical records, to the extent that they existed, were submitted into the record.
 {¶ 14} Wiley presented no evidence relating to whether Nayebi had engaged in the unauthorized practice of medicine. No evidence was presented that, in 1971, Nayebi (who had been participating in a one-year residency program at the University of Cincinnati) was not licensed to practice medicine in Ohio. Moreover, Wiley failed to present any evidence that Good Samaritan Hospital had made any representations or concealments about Nayebi or the status of his licensure at the time of Wiley's treatment. While Wiley argues on appeal, as he did at trial, that the issue of whether Nayebi was licensed had been stipulated by Nayebi during the opening statements, the opening statements were not evidence. Furthermore, the opening statements were not transcribed for this appeal. Without more, Wiley has failed to demonstrate a representation or concealment of fact, material to the transaction at hand, that was made falsely, or with such utter disregard and recklessness as to whether it was true or false, that knowledge could be inferred, and with the intent of misleading another into relying upon it.
 {¶ 15} Even if we were to assume that Wiley had proved that Nayebi was unlicensed to practice in Ohio in 1971, Wiley also failed to establish any reliance on Nayebi's status. Wiley was a minor at the time of his surgery and remembered very little about his time at Good Samaritan Hospital. Wiley's mother, who was Wiley's guardian in 1971, did not testify at trial on her son's behalf.[4] Without testimony about what Wiley's mother (as the guardian) or Wiley would have done had they known that Nayebi had been unlicensed to practice medicine in Ohio at the time Wiley was admitted to Good Samaritan Hospital, Wiley failed to prove any reliance. Absent proof of the six elements of fraud, we hold that the trial court did not err in directing a verdict in favor of Nayebi and Good Samaritan Hospital on the issue of fraud.
 {¶ 16} To prove a battery in a medical negligence claim, Wiley needed to show that Nayebi had treated Wiley without informed consent.[5] Wiley failed to produce any evidence that the alleged treatment by Nayebi was not consented to by Wiley or his mother. Wiley's mother did not testify at trial, and Wiley testified that he could not remember much of what occurred at the hospital in 1971. None of the documents presented at trial related to consent or demonstrated who consented, what was consented to, or when the consent occurred. Without more, Wiley failed to prove the elements of battery. Accordingly, the trial court did not err in directing a verdict for Good Samaritan Hospital and Nayebi on the battery claim. The first assignment of error is, therefore, overruled.
 {¶ 17} In the second assignment of error, Wiley contends that the trial court erred in granting summary judgment to Good Samaritan Hospital on the basis of laches. In the third assignment of error, Wiley maintains that the trial court erred in granting summary judgment to Good Samaritan Hospital on the negligence issue. We address the assignments in the aggregate.
 {¶ 18} The denial or granting of summary judgment with respect to fewer than all of the defendants, when affecting parties' substantial rights, constitutes a final appealable order under R.C. 2505.02 with the addition of Civ.R. 54(B) language.[6] An order that resolves fewer than all the claims of all the parties in an action may constitute a final appealable order if it contains the words "there is no just reason for delay" under Civ.R. 54(B), and if it otherwise qualifies as final and appealable under R.C. 2505.02.
 {¶ 19} In this case, the trial court included Civ.R. 54(B) language in the entry. Thus, the order became final on February 18, 2000. Pursuant to App.R. 4, Wiley had thirty days from the entry of the order or the service of notice of the judgment to perfect an appeal. Wiley did not file an appeal until February 21, 2003, more than three years after the trial court's determination on this issue. Nevertheless, Wiley contends that he did not file an immediate appeal because the order was not final given that the issue of whether Nayebi was an agent of Good Samaritan Hospital was still pending.
 {¶ 20} While we note that it appears that the trial court did address the agency issue in its summary-judgment order, Wiley should have filed a timely appeal to this court contesting the finality of summary judgment so that we could have been given the opportunity to determine whether the order was in fact final with respect to Good Samaritan Hospital. Asserting such an argument now is simply untimely. Because the February 18, 2000, summary-judgment order contained Civ.R. 54(B) language making it appealable, we hold that Wiley's present appeal of the summary-judgment order is time-barred. Because we have no jurisdiction to consider Wiley's second and third assignments of error, we sua sponte dismiss them.
 {¶ 21} Nayebi and Good Samaritan Hospital have filed independent cross-appeals. In Nayebi's cross-appeal, he brings forth three assignments of error relating to evidence admitted by Wiley against Nayebi, particularly expert evidence, evidence of a prior lawsuit initiated by Wiley, and evidence of a subsequent injury to Wiley's left leg. The fourth assignment of error brought by Nayebi relates to preemptory challenges. Given our disposition of Wiley's first assignment of error, in which we have upheld the trial court's judgment in favor of Nayebi on the issues of battery and fraud, and given that Wiley does not contest the trial court's finding in favor of Nayebi on the negligence issue, we conclude that the assignments of error in Nayebi's cross-appeal are moot. In Good Samaritan Hospital's cross-assignment, it contends that the trial court erred in allowing Wiley to have three peremptory challenges. Given our disposition of Wiley's first, second, and third assignments of error, we conclude that Good Samaritan Hospital's cross-appeal is also moot.
 {¶ 22} Accordingly, we affirm the judgment of the trial court in favor of Nayebi and Good Samaritan Hospital, and we dismiss Nayebi and Good Samaritan Hospital's cross-appeals as moot.
Judgment affirmed.
Sundermann, P.J., Doan and Winkler, JJ.
[1] Wiley v. Good Samaritan Hospital. (1999), 1st Dist. No. C-980432.
[2] See Watkinsv Cleveland Clinic Foundation (1998),130 Ohio App.3d 262, 277, 719 N.E.2d 1052.
[3] Burr v. Stark Cty. Bd. of Commrs. (1986),23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus.
[4] Nayebi presented stipulations relating to Wiley's mother's deposition testimony, none of which related to the issue of reliance.
[5] See Leach v. Shapiro (1984), 13 Ohio App.3d 393, 395,469 N.E.2d 1047.
[6] See Chef Italiano Corp. v. Kent State Univ. (1989),44 Ohio St.3d 86, 88, 541 N.E.2d 64.