OPINION
The present appeal emanates from a trial court's granting of summary judgment motions in favor of Appellees Glitsch Field Services/NDE (GFS), Robert Fiala (Fiala) and James Ficocelli (Ficocelli) against Appellant Robert J. Brocker, Jr. (Brocker). For the following reasons, the decisions of the Mahoning County Court of Common Pleas are affirmed in part and reversed in part and remanded on the sole issue of negligent misrepresentation as to all Appellees.
The history of the case is as follows: Appellant owns a 1963 Twin Commander 560F private airplane. The Federal Aviation Administration (FAA) promulgates Federal Aviation Regulations (FAR) that require airplane owners to have regular maintenance and inspections of their aircraft in order to keep their Airworthiness Certificate current. This certificate allows the plane to legally fly in the United States. In addition to the FARs, the FAA also issues Airworthiness Directives (ADs) that require specific remedial action or inspections of specific types and models of planes to ensure that the planes are airworthy.
An AD was issued for Appellant's airplane which required compliance with instructions contained in service bulletins issued by the manufacturer of the Twin Commander plane. The service bulletin at the heart of the issue required that owners of these planes have a specialized inspection of the left and right wing front lower spar caps at wing station 24.00 after accumulation of a specific amount of flight hours on the plane. Continuing inspection was required due to the plane's age and disco very of cracks on these types of planes by authorities.
According to the bulletin, the spar cap inspection was to be completed by an "A P [Airframe and Power Plant] Mechanic (or equivalent) and a Certified NDT [nondestructive testing] Inspector (or equivalent)." Twin Commander Aircraft Corporation Service Bulletin No. 90C. This bulletin also contained a detailed inspection procedure which set forth the qualifications of personnel who could conduct the inspection, the materials to use in the inspection and directions as to how to accomplish the inspection. The bulletin instructed inspectors that Twin Commander Aircraft Corporation was to be contacted if a crack was detected and that the airplane was not to continue in service. Bulletin No. 90C, Accomplishment Instructions, Part I, section d. The bulletin also stated that if no cracks were found, the radius of the spar cap was to be checked and that if a deviation was found upon inspection of this part, rough areas should be polished out according to certain measurements. Bulletin No. 90C, Accomplishment Instructions, Part I, sections e and f.
Appellant hired Appellee Ficocelli, a FAA licensed airframe and powerplant mechanic doing business as J J Aircraft Sales, to assist in performing the routine maintenance and annually required inspections on his plane. Since Appellee Ficocelli was not authorized to conduct the test needed for compliance with inspection of the spar caps pursuant to the service bulletin, he contacted the FAA on behalf of Appellant to obtain names of qualified inspectors who could conduct the inspection. The FAA referred Appellee Ficocelli to Appellee GFS who in turn selected its qualified employee, Appellee Fiala, to conduct the inspection.
On November 1, 1994, Appellees Ficocelli and Fiala inspected Appellant's plane at a private hangar. Appellant's father was present during the latter part of the testing. Appellant was not present during inspection but arrived after it was completed. Appellees Fiala and Ficocelli examined the front left lower spar cap with a boroscope and observed a mark or line which required further examination. Appellee Fiala conducted a liquid penetrant inspection as outlined in the service bulletin to determine if a defect existed. He and Appellee Ficocelli again observed a linear indication. Appellee Fiala repeated the test and found the same linear indication. Appellee Fiala issued a liquid penetrant inspection report on November 1, 1994 indicating his results on both the left wing and right wing lower spar caps. The report contained descriptions of the required procedures, standards, measurements and materials used to conduct the examination. J J Aircraft Sales was listed as Appellee's customer as Appellee Ficocelli had called Appellee Fiala on Appellant's behalf. Appellee Fiala handwrote "Lower Spar Cap @ W.S. 24.00" in the identification portion of the report and underneath that notation, wrote "Right Wing . . . Cleaned" and checked the "Accept" box. Underneath, Appellee Fiala wrote "Left Wing . . . Cleaned," checked the "Reject" box and checked "Linear" inside the "Type of Defect" box. Appellee Fiala also wrote "5/64" length on vertical face" as the location of the defect.
The facts diverge at this point. Appellant maintains that he arrived at the hangar after the inspection and that Appellees Ficocelli and Fiala told him and his father that the left lower spar cap at wing station 24 was cracked and needed to be repaired. Appellees Ficocelli and Fiala deny stating that a crack existed. Nevertheless, after a conversation regarding a mark on the left wing spar cap, Appellee Fiala recommended that the manufacturer of the plane be called for further instructions. The accounts of the parties also diverge as to whether a representative of the manufacturer was reached. Appellee Fiala stated that a representative was not reached at that time and that he thought Appellee Ficocelli or Appellant would attempt to contact the manufacturer again to ascertain the necessary procedure to determine if a crack existed in the spar cap. (Fiala Depo., pp. 57-58). Appellee Ficocelli stated that the manufacturer was contacted while Appellee Fiala was there and that Appellee Fiala spoke with the representative. (Ficocelli Depo., pp. 37-38).
Nevertheless, Appellant proceeded to contact a company in Oklahoma City to have the aircraft repaired and Appellee Ficocelli obtained a ferry permit for the aircraft to be flown to the company. The Oklahoma City company removed the spar cap and repaired the plane at a cost to Appellant of $18,705.52. Appellant subsequently requested that the Oklahoma City company test the removed spar cap and upon doing so, they found no defect on the left lower spar cap. (Brocker Jr. Depo., p. 33).
Appellant then resubmitted the removed left lower spar cap to Appellee GFS for retesting. (Brocker Jr. Depo., p. 34). Appellee Fiala conducted another liquid penetrant inspection and issued a report on January 24, 1995 finding that no linear indication existed on the left wing and that polishing or blending had occurred since his previous inspection.
On November 13, 1995, Appellant filed a complaint against Appellees GFS and Fiala alleging their negligence in failing to make a professional and accurate inspection and in issuing a report rejecting the left lower spar cap as defective. Appellant also alleged breach of contract and warranty against Appellees GFS and Fiala in failing to complete the contracted work in a professional, competent and workmanlike manner. Appellant alleged damages in the amount of $60,290.50 which included expenses incurred for the repair of the spar cap, obtaining the ferry permit to Oklahoma City, travel expenses, reduction value in the airplane of $30,000.00 due to the unnecessary repair, and loss of use of the plane while it was grounded. On December 12, 1995, Appellees GFS and Fiala filed an answer to the complaint.
Discovery began in the case and on July 31, 1996, Appellees GFS and Fiala filed a motion for summary judgment and attached supporting documentation. Appellant was granted leave to file a response to the motion.
On September 30, 1996, Appellant filed a motion for leave to file an amended complaint which was granted by the trial court on the same date. Appellant's first amended complaint added Appellee Ficocelli as a defendant, added additional facts and a third cause of action against all parties for negligent misrepresentation. Appellant also reduced his prayer for damages to $30,380.52. On October 7, 1996, Appellees GFS and Fiala filed an answer to the first amended complaint. On October 24, 1996, Appellee Ficocelli filed his answer.
On October 29, 1996, Appellees GFS and Fiala filed a supplement to their motion for summary judgment to address the first amended complaint. On February 14, 1997, the depositions of Appellees Fiala and Ficocelli and Appellant Brocker were filed. Also on this date, Appellant filed his response to the motion for summary judgment filed by Appellees GFS and Fiala and attached supporting documentation.
On March 11, 1997, the trial court sustained the motion for summary judgment filed by Appellees GFS and Fiala finding that Appellant had failed to oppose the motion as to the claims of professional negligence and negligent misrepresentation. The court held that merely showing that Appellee Fiala's report results were erroneous was insufficient to survive summary judgment and that Appellant failed to show that Appellees' conduct fell below the standard of skill and knowledge possessed by members of that profession. The court further held that Appellant failed to establish an actionable breach of warranty or contract for the same reasons.
On April 14, 1997, Appellant filed an untimely supplemental response to the summary judgment motion filed by Appellees GFS and Fiala. On the same date, Appellant filed a notice of appeal of the granting of summary judgment to Appellees GFS and Fiala. This appeal was assigned case number 97-CA-86.
Meanwhile, on May 22, 1997, Appellee Ficocelli filed a memorandum in support of summary judgment referring the court back to the summary judgment' motion of Appellees GFS and Fiala, where it was asserted that the same arguments which applied to GFS and Fiala also applied to him. In his memorandum, Appellee Ficocelli asserted that because the court granted summary judgment to Appellees GFS and Fiala and because Appellee Ficocelli was engaged in similar conduct and the same causes of action were alleged against him, the court should grant summary judgment to him as well. On July 22, 1997, Appellant filed a response to the motion for summary judgment and attached supporting documentation. On August 26, 1997, Appellee Ficocelli filed a response and attached the trial court's judgment entry granting summary judgment to Appellees GFS and Fiala.
On October 2, 1997, the trial court sustained Appellee Ficocelli's motion for summary judgment. The court again found that for Appellant to survive summary judgment he needed to present evidence of negligence or unworkmanlike performance on the part of Appellee Ficocelli and that erroneous test results or opinions standing alone were insufficient to establish Appellant's claims. The court also found a supporting affidavit insufficient. On October 24, 1997, Appellant filed a notice of appeal of the trial court's decision granting summary judgment to Appellee Ficocelli. This Court assigned case number 97-CA-216 to the appeal.
Appellant has filed separate briefs for both appeals but alleges the same single assignment of error in both briefs:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE JAMES C. FICOCELLI'S MOTION FOR SUMMARY JUDGMENT."
Appellant argues that the trial court erred in granting the motions for summary judgment as genuine issues of material fact existed regarding the cause of his injuries and reasonable minds could conclude that the injuries resulted from Appellees' negligence when viewing the evidence in a manner most favorable to him. Since we find that the issues as against Appellees GFS, Fiala and Ficocelli contain a common basis in law, we shall address the applicable law together and then apply the law separately to each motion for and response to summary judgment.
In reviewing a trial court's grant of summary judgment, an appellate court reviews the record de novo and applies the same standard used by the trial court in its determination. Dinsio v.Occidental Chem. Corp. (1998), 126 Ohio App.3d 292, 294, citingVarisco v. Varisco (1993), 91 Ohio App.3d 542, paragraph four of the syllabus. We are required to look at the record in a light most favorable to the nonmoving party. Dinsio, supra, citingEngel v. Corrigan (1983), 12 Ohio App.3d 34. This Court is also mindful that "[s]ummary judgment should be used cautiously so as not to usurp a litigant's right to trial where conflicting facts and * * * [circumstances] are present. * * *" Cashman v. Reider'sStop-n-Shop Supermarket, (1986), 29 Ohio App.3d 142, 145, quotingViock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 15
[citations omitted].
Civ.R. 56 (C) provides that before a court may grant summary judgment, it must determine that:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. The movant has the initial burden of informing the trial court of the basis for its motion and "* * *must be able to specifically point to some evidence of the type listed in Civ.R. 56 (C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." Vahila v. Hall
(1997), 77 Ohio St.3d 421, 429 quoting Dresher v. Burt (1996),75 Ohio St.3d 280, 293.
Once this initial burden is met, the opposing party has a reciprocal burden to show specific facts that demonstrate that a genuine issue for trial exists. Id. The opposing party cannot rest on his pleadings, but must produce evidence on any issue for which he bears the burden of production at trial. Wing v. AnchorMedia, Ltd. of Texas (1991), 59 Ohio St.3d 108, 111. To defeat a summary judgment motion, the opposing party must present some evidence to raise a genuine issue of material fact. Lovejoy v.Westfield Nat. Ins. Co. (1996), 116 Ohio App.3d 470, 474, citingDresher, supra. Civ.R. 56 (C) requires that a court grant summary judgment, after adequate time for discovery and upon motion, against a party who fails to sufficiently show the existence of the essential elements on which that party will bear the burden of proof at trial. Lovejoy, 116 Ohio App.3d at 474, citing Dresher, supra.
In their summary judgment motion, Appellees GFS and Fiala met the initial burden of informing the trial court of the basis for their motion by asserting that Appellant could not prove the essential element of breach on his claims of professional negligence, breach of contract, breach of warranty and negligent misrepresentation. Appellees also asserted that economic damages are not recoverable in a negligence action and economic losses are not recoverable for a breach of a service contract.
Appellees attached the affidavits of Appellees Fiala, who attested to over fifteen years of experience in conducting liquid penetrant tests, and Appellee Ficocelli, who had assisted before in conducting such tests. Both gentlemen attested that the required procedures were followed in conducting the tests and that they believed the tests were conducted in a competent and workmanlike manner. Both also stated that they observed a linear defect in the left lower spar cap upon examination and testing. The deposition of Appellant was also attached in which he did state that he had no evidence that Appellee Fiala conducted the inspection or testing in a less than competent manner. Appellees also cited to case law and attached Appellant's answer to an interrogatory to show that Appellant suffered solely economic damages.
The onus then shifted to Appellant to show specific facts which demonstrated that genuine issues for trial existed and to provide a sufficient showing of the essential elements of his claims as to professional negligence or negligence, breach of contract and warranty, and negligent misrepresentation. Appellant failed to establish or even infer that he could prove that Appellees breached their duty to him. To sustain a claim of negligence, a plaintiff must show a duty owed by defendant to a plaintiff, a breach of that duty, injury or damages, and the existence of proximate cause between the breach and the injury or damages. SeeMenifee v. Ohio Welding Prod., Inc. (1984), 15 Ohio St.3d 75. Professional negligence encompasses these essential elements as well, Second Natl. Bank of Warren v. Demshar (1997), 124 Ohio App.3d 645, but necessitates the showing of and breach of a professional standard of care with regard to the particular occupation. We are unsure as to whether Appellant is asserting a claim for negligence, professional negligence, or both. However, because both contain the essential element of breach and Appellant has failed to demonstrate this element, both claims fail to survive summary judgment.
To establish a claim of breach of contract, the plaintiff must show "* * *the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Doner v. Snapp (1994), 98 Ohio App.3d 597, 600. With his motion in opposition to Appellees OPS and Fiala's request for summary judgment, Appellant attached the results of the liquid penetrant tests performed by Appellee Fiala before and after the repair to the wing and pointed to the fact that the Oklahoma City company found no defect upon repair of the plane. Appellant also attached a copy of the service bulletin outlining the procedure to be followed in inspecting the plane. Appellant further attached his own affidavit stating that Appellees told him that a crack existed in the wing and needed to be repaired. Appellant later filed an affidavit of the manager of engineering services for the plane's manufacturer in a supplement filed on April 14, 1997, but the supplement was untimely filed.
Despite these numerous attachments, Appellant failed to raise specific facts demonstrating that Appellees GFS and Fiala breached their duty in inspecting the plane and issuing the written report of the liquid penetrant test results. The liquid penetrant results alone were insufficient to show or infer duty, breach and negligence in inspection and issuance of the report. None of Appellant's evidence demonstrated that Appellees' conduct fell below the standard of care required, whether it be that of a reasonable person (for negligence) or that of a reasonable professional inspector within the profession. It has been held that "* * *a summary judgment motion can be overcome only by specific and provable facts — not mere allegations. Evidence of a possible inference is insufficient." Allore v.Flower Hosp. (1997), 121 Ohio App.3d 229, 234, citing Jackson v.Alert Fire Safety Equip. Inc. (1991), 58 Ohio St.3d 48, 52; Coxv. Commercial Parts Serv. (1994), 96 Ohio App.3d 417, 421. Nor did Appellant demonstrate that Appellees performed in an unworkmanlike manner to establish the breach of contract and/or warranty.
For the same reasons, the trial court correctly found that Appellant failed to survive the motion for summary judgment filed by Appellee Ficocelli on the claims of professional negligence and breach of contract and warranty. In his motion, Appellee Ficocelli asserted that as a matter of law, Appellant could not demonstrate that he committed any breach in order to sustain the claims against him. Appellees GFS and Fiala had referenced Appellee Ficocelli in their motion for summary judgment and stated that their arguments and assertions applied equally to Appellee Ficocelli. When the trial court granted the summary judgment motion for Appellees GFS and Fiala, it did not mention Appellee Ficocelli. Consequently, Appellee Ficocelli filed a memorandum and request for summary judgment reminding the court that he was referenced in the motion for summary judgment filed by Appellees GFS and Fiala.
Appellant filed a motion in opposition to Appellee Ficocelli's request for summary judgment and argued that Appellee Ficocelli was negligent in inspecting the plane, issuing a report, in telling Appellant and his father that a crack existed in the left lower wing spar cap and in making the arrangements for the repair. Accompanying this motion, Appellant attached the liquid penetrant test results issued by Appellee Fiala, the applicable manufacturer's service bulletin and an affidavit from duly license airframe and powerplant mechanic David Friend. Friend attested that he subsequently tested the spar cap and found no defect, that a qualified inspector should be able to ascertain whether an indication is a crack or a scratch and that once an inspector "rejects" a part, the aircraft containing that part is considered "un-airworthy." Appellant also included his own affidavit and that of his father's. Both stated that Appellees Fiala and Ficocelli told them that the spar cap contained a crack that required repair. Appellant also attached copies of documents showing the expenses he had incurred in repairing the plane and referencing Appellee Ficocelli's deposition where he stated that "* * * there may have been comments made as to the fact that it appears to be a crack, this is what happens when you have a crack." (Ficocelli Depo., p. 37)
Appellee Ficocelli filed a response to the motion in opposition stating that Appellant could not show a breach of duty because Appellee Ficocelli did not sign the liquid penetrant test results and was not qualified to conduct the required inspection. This was the reason Ficocelli contacted the FAA to obtain the names of companies and persons so qualified. Appellee Ficocelli stated he did not tell Appellant or his father that the spar cap contained a crack because he was not qualified to make that statement. Appellee Ficocelli also stated Appellant and his father made all of the necessary arrangements for repairs.
Again, the trial court correctly found that Appellant had failed to demonstrate the essential elements of negligence and breach of contract or warranty because he failed to show "that Appellee Ficocelli breached a duty or standard of care, reasonable or professional, to him. Further, the state of the record fails to show that Appellee Ficocelli owed a duty to Appellant with regard to inspection of the spar cap and issuance of a report. Appellant concedes that Appellee Ficocelli contacted Appellees GFS and Fiala to perform the specialized inspection of the spar caps because Appellee Ficocelli was not authorized to do so. Appellee Ficocelli's signature is not on the test reports. His signature was not required because he was not the inspector. Appellee Ficocelli's affidavit and deposition testimony indicating that he was not qualified to perform and did not perform this inspection was not rebutted by Appellant. Nor did Appellant raise specific facts beyond inference to demonstrate that Appellee Ficocelli conducted himself in a negligent manner in his assistance of Appellee Fiala in performing the test. Without the demonstration that Appellant could prove the essential elements of duty and breach, the trial court properly granted summary judgment for Appellee Ficocelli on the claim of professional negligence or negligence. Without the demonstration that a contract existed for such services with Appellee Ficocelli and that Appellee Ficocelli breached his contract with Appellant or performed in an unworkmanlike manner, the trial court additionally acted properly in granting summary judgment for Appellee Ficocelli on this claim.
Although we find that the trial court properly granted Appellees' motions for summary judgment as to the issues of negligence and breach of contract and warranty based upon the record, we find that the trial court erred in granting summary judgment to Appellees on the issue of negligent misrepresentation. Appellant did provide sufficient evidence to raise genuine issues of material fact as to that issue. Appellees GFS and Fiala met their initial burden on this issue. They asserted on summary judgment that Appellant could not prove This claim as he could not produce evidence of breach of duty and that purely economic damages were not recoverable in a negligence action. Appellees cited to supporting documentation contained within their first motion for summary judgment based upon the allegations in the original complaint. Appellee Ficocelli also met this initial burden in his subsequent request for summary judgment based upon the decision of the trial court to grant summary judgment to Appellees GFS and Fiala.
The burden then shifted to Appellant to demonstrate specific facts and evidence demonstrating that a genuine issue for trial existed and that he could prove the essential elements of negligent misrepresentation. A negligent misrepresentation occurs when:
 "`[One] who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'" (Emphasis sic.)
Leal v. Holtvogt (1998), 123 Ohio App.3d 51, 62, quoting TextronFin. Corp. v. Nationwide Mut. Ins. Co. (1996), 115 Ohio App.3d 137,149, discretionary appeal not allowed (1997), 78 Ohio St.3d 1425,1425, quoting 3 Restatement of the Law 2d, Torts (1977) 126-127, Section 552 (1), adopted in Delman v. Cleveland Hts.
(1989), 41 Ohio St.3d 1.
Further, "[a] representation made with an honest belief in its truth may still be negligent, because of lack of reasonable care in ascertaining the facts, or in the manner of expression, or absence of the skill and competence required by a particular business or profession." Merrill v. William E. Ward Ins. (1993),87 Ohio App.3d 583, 590, quoting Prosser Keeton, Law of Torts (5 Ed. 1984) 745, Section 107. The rule as found in the Restatement limits one's liability to those person who were intended to benefit from the information or to those persons to whom the defendant knows the information will be supplied and who suffer damages resulting from their justifiable reliance thereon.Id.
In his response to the summary judgment motion of Appellees GFS and Fiala, Appellant refers to the deposition testimony of Appellee Fiala to show that Appellee GFS held itself and its employee Appellee Fiala out to be qualified to do the particular type of inspection on his plane. The inspection was requested through Appellee Ficocelli, his mechanic. Appellant also filed his own affidavit attesting that both Appellee Fiala and Ficocelli affirmatively and specifically stated to him and his father that the left lower spar cap was cracked and was in need of repair. Appellant further attested that Appellees Fiala and Ficocelli called the manufacturer immediately after the inspection. This action conformed with the representation they made that the spar cap was cracked as the service bulletin, also attached to his motion, required contact with the manufacturer only upon finding a crack. Appellant stated in his affidavit that based upon the representation that the spar cap was cracked, arrangements were made to ferry the plane to Oklahoma City for repair and that he incurred expenses for the ferry and repair of the plane. Copies of the expenses incurred were attached.
Appellant stated by affidavit that he subsequently had the allegedly defective spar cap tested. It was found to be without defect. Appellant then referred to the deposition testimony of Appellee Ficocelli, specifically his statement that "* * *there may have been comments made as to the fact that it appears to be a crack, this is what happens when you have a crack." (Ficocelli Depo., p. 37). Appellant additionally submitted the affidavit of David Friend, a licensed airframe and powerplant mechanic who inspected and tested the allegedly defective left spar cap and found no defect and who stated that an inspector who finds a defect should communicate the indication as "a defect" and not "a crack".
Thus, Appellant has raised sufficient evidence of the elements of negligent misrepresentation. He has also, by affidavit and deposition testimony which disputes Appellees' affidavits, raised issues of material fact with regard to whether Appellees Fiala and Ficocelli made verbal misrepresentations that a crack existed in the left lower spar cap and as to whether the spar cap. Since Appellees deny making such representations, it is clear fom the record that issues of material fact are in dispute. Appellant presented sufficient evidence to place before a factfinding body and avoid summary judgment on this issue.
Further, while Appellant has not produced evidence of a breach of the exercise of reasonable care by Appellees in obtaining information in the actual inspection or in producing the written test results, he has presented sufficient evidence to raise a genuine issue of material fact as to the exercise of reasonable care in communicating the information. The definition of negligent misrepresentation includes not only failing to exercise reasonable care in obtaining the information, but also when one "`* * *fails to exercise reasonable care or competence in * * *communicating the information.'" (Emphasis added). Holtvogt,123 Ohio App.3d at 62 [citations omitted]. Appellant has produced sufficient evidence to raise the issue of justifiable reliance on this information by showing the qualifications and licensures of Appellees to perform their special skills and by showing the expenses that he incurred in taking steps to repair the spar cap immediately upon this communication by Appellees. Credibility of the parties, whether reliance on these statements if made was justified and whether or not Appellant should have obtained a "second opinion" or second inspection is an issue for the factfinder's determination.
Additionally, we find the argument of Appellees that a plaintiff cannot recover purely economic damages for a negligent misrepresentation claim misplaced in this case. In Floor CraftFloor Covering, Inc. v. Parma Community General Hosp. Ass'n, the Ohio Supreme Court held that "[i]n the absence of privity of contract between two disputing parties the general rule is `there is no * * * duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things.'" (1990), 54 Ohio St.3d 1,3, quoting Prosser Keeton, Law of Torts (5 Ed. 1984) 657, Section 92. The Court barred recovery by a contractor against an architectural firm or design professional when there was no privity of contract and no nexus between the parties existed that could substitute for contractual privity. Id.
The instant case is distinguishable as we are not dealing with a design professional and a sufficient nexus between the parties existed. Interaction between all of the parties occurred and the relationship between them was not as attenuated as that in FloorCraft, supra. See Foster Wheeler Enviresponse, Inc v. FranklinCty. Convention Facilities Auth., (1993), 88 Ohio App.3d 73, 76. Further, the express wording of Section 552 of the Restatement which defines negligent misrepresentation specifically states that one is subject to liability "* * *for pecuniary loss* * * *" Black's Law Dictionary defines "pecuniary loss" as "economic loss." (6 Ed. 1990) 1131; See McCarthy, Lebit, Crystal HaimanCo., L.P.A. v. First Union Mgt., Inc. (1993), 87 Ohio App.3d 613,632.
For all of the foregoing reasons, we find that the assignments of error advanced by Appellant are meritorious solely as to the issue of negligent misrepresentation as against all Appellees. Accordingly, the trial court judgment is hereby reversed as to that issue, alone, and remanded for proceedings in accord with law and consistent with this Court's opinion.
Cox, P.J., concurs.
Vukovich, J., concurs.
APPROVED:
 ____________________________ CHERYL L. WAITE, JUDGE