SECOND NATIONAL BANK OF WARREN, Appellant,

v.

DEMSHAR, Appellee.

[Cite as *Second Natl. Bank of Warren v. Demshar* (1997), 124 Ohio App.3d 645.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 97–A–0022.

Decided Dec. 30, 1997.

*William L. Hawley,* for appellant.

*Alan M. Petrov* and *Todd M. Haemmerle,* for appellee.

---

CHRISTLEY, Presiding Judge.

This is an accelerated appeal taken from a final judgment of the Ashtabula County Court of Common Pleas. Appellant, Second National Bank of Warren, appeals from the trial court's decision granting summary judgment in favor of appellee, Paul A. Demshar, in an action for professional negligence.

Appellee was a certified public accountant who was hired by Beidler–Taylor Roofing Company ("Beidler–Taylor") in May 1993 to conduct a review of Beidler–Taylor's 1993 financial statements. In accordance with the terms of employment, Beidler–Taylor was to provide appellee with copies of its balance sheet as of December 31, 1993, along with related statements of income, retained earnings, and cash flows for the year. His review of the documents was not an audit but instead was a more limited report to Beidler–Taylor concerning appellee's assessment of the financial procedures employed by the company.

Early in 1994, appellee received the aforementioned financial records from Beidler–Taylor, and he thereafter conducted his review. On March 9, 1994, appellee issued a cover letter and accompanying report to Beidler–Taylor. In the letter, appellee set out a disclaimer that reiterated that he had not conducted an audit of the company and that his limited review was based only upon the financial data provided to him by the management of Beidler–Taylor.[1] The overall conclusion drawn by appellee in his March 9, 1994 letter and report was that he was not aware of any material modifications that needed to be made to Beidler–Taylor's financial statements in order for them to be in conformity with generally accepted accounting principles.

During this same period of time, Beidler–Taylor had an ongoing business relationship with appellant. Specifically, as of January 1, 1994, appellant had already extended a $250,000 line of credit to Beidler–Taylor.

Between January 1994 and May 1994, Beidler–Taylor completely exhausted the $250,000 line of credit. When obtaining the loan from appellant, Beidler–Taylor submitted financial documentation to the bank, including the March 9, 1994 letter

---

1. The critical portion of the disclaimer stated:

    "A review consists primarily of inquiries of Company personnel and analytical procedures applied to financial data. It is substantially less in scope than an examination in accordance with generally accepted auditing standards, the objective of which is the expression of an opinion regarding the financial statements taken as a whole. Accordingly, we do not express such an opinion."

and report that had been prepared by appellee. Appellant, however, had already lent the entire $250,000 to Beidler–Taylor before coming into possession of the letter and report. On May 10, 1994, appellant reaffirmed the existing credit line and increased it by an additional $50,000.

By the autumn of 1994, Beidler–Taylor was in serious financial difficulty, and the company defaulted on its loan obligation to appellant. Beidler–Taylor ultimately filed for bankruptcy before appellant could recover the outstanding balance on the loans to the company.

On August 18, 1995, appellant filed a civil action against appellee. The single count of the complaint alleged professional negligence on the part of appellee. Specifically, appellant claimed that appellee's review of Beidler–Taylor's financial statements was undertaken in a negligent fashion because appellee's work product fell below the standard of care used by reasonable certified public accountants. The gravamen of the complaint was that appellant had relied on the March 9, 1994 letter and report when it made the decision on May 10, 1994, to maintain and increase the line of credit available to Beidler–Taylor. Appellee filed an answer denying the allegation of negligence on October 17, 1995.

Following ample time for discovery, appellee moved for summary judgment on September 18, 1996. Appellee filed a brief in support of his motion for summary judgment, and appellant filed a reply brief opposing the motion. In addition, the trial court had before it three depositions that were submitted for consideration: (1) a deposition of appellee, (2) a deposition of Stephen P. Vargo ("Vargo"), a loan officer employed by appellant, and (3) a deposition of Roger B. Watkins ("Watkins"), a certified public accountant who was testifying as an expert witness on behalf of appellant.

On March 13, 1997, the trial court issued a written opinion and judgment entry granting appellee's motion for summary judgment. In doing so, the trial court concluded as a matter of law that appellee did not owe a duty of care to appellant and that appellant could not prevail in an action for negligence. From this decision, appellant timely filed an appeal with this court, in which it asserts the following assignment of error:

"The trial court erred to the prejudice of plaintiff-appellant by granting defendant-appellee's motion for summary judgment."

The standard for addressing a motion for summary judgment is set forth in Civ.R. 56(C). In order to prevail, the moving party must establish that (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and in viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the

nonmovant. Civ.R. 56(C); *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 268, 617 N.E.2d 1068, 1070–1071; *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 65–66, 609 N.E.2d 144, 144–146; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274.

If the moving party meets its initial burden under Civ.R. 56(C), the nonmoving party then has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. If the nonmovant fails to do so, then the trial court may enter summary judgment against that party. Civ.R. 56(E); see, also, *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274.

■ An order granting a motion for summary judgment will be upheld when, construing the evidence in the light most favorable to the nonmoving party, the record reveals that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. In determining whether a trial court properly granted summary judgment, an appellate court will apply a *de novo* standard of review. *McCallister v. Portsmouth* (1996), 109 Ohio App.3d 807, 810, 673 N.E.2d 195, 196–197; *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200.

■ It is well established that a plaintiff must demonstrate the following elements in an action for professional negligence: (1) the existence of a legal duty, (2) a breach of that duty, (3) proximate causation, and (4) injury or damages. If the party moving for summary judgment in a negligence action can point to evidence illustrating that the nonmoving party will be unable to prove any one of these elements, then the movant is entitled to judgment as a matter of law.

■ In the case at bar, the initial question that must be addressed is whether appellee, as a certified public accountant, owed a legal duty to appellant, a nonclient. Appellant, of course, was not in privity with appellee because it was not a client for whom the accounting report had been generated. Instead, it stood in the position of a third party who relied upon the report prepared for a client of appellee in his capacity as a certified public accountant. The trial court concluded that appellee did not owe any duty of care to appellant. In reaching this decision, the trial court relied upon the case of *Haddon View Invest. Co. v. Coopers & Lybrand* (1982), 70 Ohio St.2d 154, 24 O.O.3d 268, 436 N.E.2d 212. We agree that *Haddon View* contains the current standard from which an accountant's liability to a third party can be determined. In *Haddon View*, the Supreme Court of Ohio held:

"An accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen." *Haddon View* at syllabus.

Through this holding, the Supreme Court of Ohio declined to maintain the previous threshold requirement that a plaintiff must be in privity of contract with a defendant-accountant in order to pursue a tort claim of malpractice caused by reliance on the accounting services provided by the defendant. Instead, it held that the accountant's duty to prepare reports using generally accepted accounting principles extends to any third party to whom the accountant specifically understands the reports will be shown for business purposes. *Id.* at 157, 24 O.O.3d at 269–270, 436 N.E.2d at 214–215. The holding in *Haddon View* has been cited affirmatively by the Supreme Court of Ohio several times since its inception. See, *e.g., Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St.3d 1, 3–4, 560 N.E.2d 206, 208–209; *Simon v. Zipperstein* (1987), 32 Ohio St.3d 74, 77, 512 N.E.2d 636, 638–639 (H. Brown, J., dissenting); *Adair v. Wozniak* (1986), 23 Ohio St.3d 174, 178, 23 OBR 339, 342, 492 N.E.2d 426, 429, fn. 3.

However, it is important to remember that the instant case did not involve an audit, as did *Haddon View*, but rather a letter and financial report, which specifically pointed out that it was *not* an audit. Further, as noted in footnote one, there was a disclaimer. *Haddon View* is silent as to the existence of any disclaimer.

In the present matter, both parties argue that the relevant standard is not *reasonable* foreseeability but is rather *specific* foreseeability. Under that assumption, the question that arises is whether appellant was a member of a limited class whose reliance on the representations in the March 9, 1994 letter and report was specifically foreseen by appellee in his professional capacity. Beyond this, we pose an additional question of what was the extent of any duty established in light of the fact that something less than an audit was involved.

As indicated earlier, appellee, the accountant, had the initial burden under Civ.R. 56(C) to demonstrate that there was no genuine issue as to any material fact. Thus, at the outset, appellee had the burden of showing that appellant failed to submit evidence demonstrating that appellee owed any legal duty to the bank. Appellee's own deposition and the two depositions submitted by appellant during the summary judgment process satisfied appellee's initial Civ.R. 56(C) burden of demonstrating that he was entitled to judgment as a matter of law because he owed no legal duty to appellant under the facts of this case.

The burden then shifted to appellant under Civ.R. 56(E) to come forward with evidence tending to show a genuine issue of material fact as to whether the bank was within a limited class whose actual reliance, as well as degree of any such

reliance, on the letter and accounting report was specifically foreseen by appellee in his professional capacity. Appellant, in other words, had to prove that when the accounting documents consisted of a cover letter and financial report with disclaimer, as opposed to an actual audit, a genuine issue of material fact existed as to whether the bank was in a limited class to whom appellee owed a duty in light of the standard announced in *Haddon View.*

In an effort to try to meet this burden, appellant refers to the following excerpt from appellee's deposition testimony:

"Q. So, you understood that Second National Bank was a creditor of Beidler–Taylor?

"A. Yes.

" * * *

"Q. Okay. Did you expect that Second National Bank would review your letter after you wrote it?

"A. My financial statement? Yes.

" * * *

"Q. Okay. Would that be because they were a creditor?

"A. Yes."

Even if we accept that appellee knew that his client, Beidler–Taylor, was going to give appellant a copy of the March 9, 1994 letter and report, we cannot conclude that appellant satisfied the *Haddon View* test. *Haddon View* requires that an accountant have specifically foreseen that a third party was a member of a limited class who intended to rely on the accountant's work product for business purposes. While appellee knew that appellant was a creditor of Beidler–Taylor and that appellant might *review the letter and report* after their submission to Beidler–Taylor, this does not establish that appellee specifically foresaw that the bank, as a result of such review, would *rely on his work product for business purposes,* despite the disclaimer.

Nothing in appellee's deposition testimony supports the conclusion that the bank was a member of a limited class whose degree of reliance on the accounting report and letter was specifically foreseen by appellee. While the distinction between an audit and a financial report was acknowledged, appellant failed to provide additional evidence which addressed this distinction in terms of how appellee as a certified public accountant should have specifically foreseen that the bank would actually rely on the financial report beyond the parameters set out in the disclaimer.

In its ruling granting summary judgment to appellee, the trial court found the case analogous to *BancOhio Natl. Bank v. Schiesswohl* (1986), 33 Ohio App.3d 329, 515 N.E.2d 997. In *BancOhio,* the bank had entered into various financing agreements with a company known as Northern Ohio Tractor. At some point, the bank began requiring that Northern Ohio Tractor submit financial statements prepared by independent certified public accountants.[2] However, the statements provided by Northern Ohio Tractor were ones that it had ordered its accounting firm to prepare for submission to its franchisor, John Deere. After Northern Ohio Tractor went bankrupt, BancOhio brought an action against the accountants, alleging negligent preparation of the financial statements.

The trial court directed a verdict for the accountants, and the Ninth District Court of Appeals affirmed. The appellate court reasoned that although the accounting firm knew, after the fact, that BancOhio had relied on the financial statements, there was no evidence to suggest that the accountants were aware *at the time they were preparing the statements* that the company might submit the financial statements to the bank as well as to John Deere.

In the case at hand, appellee admitted that he was cognizant of the fact that appellant might review the March 9, 1994 letter and report because he knew that the bank had previously extended a line of credit to Beidler–Taylor. However, at no point did appellee equate *review* with *reliance.* Appellant subsequently failed to come forward with evidence that demonstrated that appellee, in his capacity as a certified public accountant, either foresaw or ought to have specifically foreseen that appellant *intended to rely* on appellee's work product to the degree that it did when making its decision to reaffirm the line of credit and increase it by another $50,000 on May 10, 1994. The testimony from appellee's deposition excerpted above and relied upon by appellant does not satisfy the specific foreseeability standard announced in *Haddon View.*

A review of the other two depositions that were filed with the trial court for consideration supports the conclusion that appellant subsequently did not satisfy its reciprocal burden under Civ.R. 56(E). Appellant's loan officer, Vargo, admitted in his deposition that appellee submitted the March 9, 1994 letter and report to its client, the construction company, and not directly to appellant. In addition, Vargo conceded that he was aware that the documents did not constitute an audit.[3] Vargo also admitted that after its review, the bank never attempted to contact appellee in order to discuss or verify the financial information or analysis

---

**2.** In *BancOhio,* the facts are even less compelling than those of the instant case because no mention is made of any disclaimers being made by the accountants.

**3.** Vargo apparently had some accounting background but was not a certified public accountant. He was deposed in his capacity as a bank officer and not as an accounting expert.

contained in the report. As to why the bank relied upon the letter and report, despite the disclaimer, the following deposition excerpt is informative:

"Q. Do you have a specific recollection of reading the letter?

"A. Yes.

"Q. And, when you read the second paragraph, 'A review consists primarily of inquiries of Company personnel and analytical procedures applied to financial data. It is substantially less in scope than an examination in accordance with generally accepted auditing standards, the objective of which is the expression of an opinion regarding the financial statements taken as a whole. *Accordingly, we do not express such an opinion.*' When you read that paragraph are you telling me it was your conclusion that Mr. Demshar was expressing an opinion concerning the validity of the financial statements taken as a whole?

"A. Yes, because certain tests were applied.

"Q. What tests were applied?

"A. Inquiries of company personnel and analytical procedures applied.

"Q. What analytical procedures were applied?

"A. I do not know.

"Q. Did you ask anyone?

"A. No." (Emphasis added.)

Other than his unsupported conclusion that a professional opinion of validity had been rendered by appellee, there was nothing of substance offered to justify such a conclusion. Hence, no evidence could be gleaned from Vargo's deposition which supported appellant's position that appellee, as a certified public accountant, should have specifically foreseen that the financial report would be relied upon by the bank for business purposes.

The second deposition submitted by appellant was that of Watkins, its own expert witness. Watkins was deposed extensively concerning his opinion as to how appellee's work fell below reasonable accounting standards. He opined that appellee should have discovered that the financial documents provided to appellee by the management of Beidler–Taylor were not prepared in accordance with generally accepted accounting principles. Although Watkins's deposition detailed how appellee allegedly breached the standard of care attributed to a reasonably prudent accountant, it offered no insight into the antecedent question of whether appellee owed a legal duty to appellant in the first place.

Thus, Watkins did not offer any expert testimony that would explain why the bank fell within a definable and contemplated class whose reliance on the March 9, 1994 letter and report should have been specifically foreseen by appellee as a

certified public accountant, particularly in light of the disclaimer. In other words, there was no evidence offered by appellant that a certified public accountant should have specifically foreseen that a report to a client, which included a very specific disclaimer as to the veracity of the data relied upon, would be relied upon for business purposes by a third party such as appellant.

After reviewing the record, we conclude that appellant did not satisfy its Civ.R. 56(E) burden to produce evidence that it was a member of a limited class whose reliance on the letter and report was specifically foreseen or ought to have been by appellee as a certified public accountant. Consequently, appellant did not demonstrate that appellee owed a duty of care to appellant, and the trial court properly granted appellee's motion for summary judgment.

Because appellant could not clear the initial hurdle of establishing that it was owed a legal duty, we need not consider whether appellee breached any subsequent duty of care imposed on professional accountants through any negligent conduct by appellee in his review of Beidler–Taylor's financial records. Likewise, the question remains open as to whether the entire $300,000 constituted the proximately caused damages if liability were ever imposed, as opposed to just the $50,000 lent by appellant after the receipt of the letter and report.

For the foregoing reasons, appellant's lone assignment of error is not well taken. Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

NADER and WILLIAM M. O'NEILL, JJ., concur.