OPINION
Appellant Donald L. Ortner appeals a summary judgment of the Richland County Court of Common Pleas, dismissing his complaint for professional negligence, fraud, and breach of fiduciary duty against appellees Kleshinski, Morrison Morris; Larry A. Morrison; and Richard Kleshinski:
 "I. THE TRIAL COURT ERRED BY GRANTING DEFENDANT-APPELLEES' MOTION TO STRIKE THE AFFIDAVIT OF DONALD ORTNER.
 "II. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEES' MOTION FOR SUMMARY JUDGMENT BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT PRESENTED BY THE RECORD BEFORE THE COURT."
In late 1993, appellant began having discussions with Jeff Maibach concerning the purchase of a farm implement dealership known as Trac-Line Equipment, Inc., hereinafter referred to as "Trac-Line." Appellant and Maibach periodically discussed the possibility of appellant acquiring part of the Trac-Line business. Such discussions continued for approximately eighteen months. During this time period, Maibach provided appellant with a packet of information developed by appellees for potential investors, in their capacity as Certified Public Accountants for Trac-Line. The document, titled "Confidential Corporate Marketing Document," was prepared for use by prospective purchasers in considering their interest in acquiring Trac-Line. The preface to the packet included a disclaimer that no representations were made by appellees as to the accuracy of such statements, estimates, or projections, and the only information that would have any legal effect would be that specifically represented in a definitive purchase agreement. The document included some general information about the company, and included a financial review of the company.
Maibach then introduced appellant to appellee Morrison. Appellant met with Morrison at the office of the accounting firm. At this meeting, appellant became aware that appellee Morrison was also considering making a personal investment in Trac-Line. It later came to his attention that appellee Kleshinski was also considering making an investment in Trac-Line.
Appellant understood that through his investment, he would be purchasing twenty-five percent of Trac-Line stock, which was equivalent to twenty-five percent of the book value of the business. Appellant asked appellees to provide him with an appraisal of any real estate owned by Trac-Line, an inventory sheet, listings of Trac-Line's current accounts receivable and accounts payable, and an asset list. Appellant had a hunch that Trac-Line would pay for itself in five years, based on the financial information provided to him. Appellee Morrison represented to him that Trac-Line would pay for itself in five years. When appellant asked appellee Morrison about having an independent accountant go over things at the business, he was assured by Morrison that it would be a waste of money, and also assured him that the inventory as reported was accurate, although the inventory figures were received from a third party. Kleshinski told appellant he felt it was a good deal, as Morrison was pretty conservative, and Morrison was interested in investing.
After purchasing twenty-five percent of Trac-Line's stock for $290,200, appellant became both an officer and director of the company. During one of the first board meetings of the company, appellant discovered that the initial inventory of parts had been overstated by approximately $100,000. While this inventory was conducted by an outside firm, and not appellees, the figure was included in the book value, and used in calculating the purchase price. Morrison told appellant that Linette Jackson, a bookkeeper of the company, had discovered the discrepancy and did not know how to handle it, and was waiting for appellees to instruct her so that she could prepare her year-end reports.
Further, the financial report prepared by appellees included an asset called the dealer financial reserve. Appellant testified that when he asked Morrison what the dealer reserve was, he was told it was a volume bonus or incentive, through which John Deere would pay extra money to Trac-Line based on sales volume, which would be available at the close of the dealership. Appellant later discovered that the dealer reserve was not related to any kind of incentive plan, but consisted of money the business was required to keep in case a purchaser who financed a deal through John Deere defaulted. If default occurred, the dealership, in this case, Trac-Line, was required to make up the difference to John Deere out of this reserve account. Finally, appellant noted that he discovered equipment listed on the company's used equipment inventory sheet that was not owned by Trac-Line.
In June of 1999, appellant sold his interest in the business. Appellant brought the instant action for professional negligence, fraud, and breach of a fiduciary duty. Appellees moved for summary judgment on all counts. In addition, appellees moved to strike appellant's affidavit, arguing it was contradictory to his deposition testimony. The court struck the affidavit from the record as an attempt to recant his prior deposition testimony. The court granted summary judgment on all counts, finding that appellees owed no duty to appellant, as he was not a member of the limited class whose degree of reliance on the marketing document was specifically foreseen by appellees. On the claim for fraud, the court found no evidence to create a genuine issue of material fact in support of the claim. On the claim for breach of fiduciary duty, the court found that appellant failed to present any evidence in support of his claim of existence of a fiduciary relationship. On the claim for punitive damages, the court found that appellant presented no evidence concerning actual malice. The court accordingly dismissed the complaint in its entirety.
 I
Appellant argues that the court erred in striking his affidavit as inconsistent with his prior deposition testimony. The court did not explain on what issues it found the affidavit to contradict the prior deposition testimony; however, we will assume the court accepted the argument raised by appellees in their motion to strike, as the affidavit was stricken in its entirety.
A non-moving party may not defeat a motion for summary judgment by creating an issue of fact by a contradictory affidavit. E.g. Zara v.Gabrail (December 21, 1998), Stark Appellate No. 98-CA-0064.
In paragraph two of the affidavit, appellant avers that prior to purchasing his share in Trac-Line, he relied on advice and information given to him by appellees, to whom he looked upon as his financial advisors. Appellees argue that this contradicts his deposition statement that he did not consult with any financial advisor concerning his purchase of Trac-Line. However, the statement referred to in the deposition was in response to a question of whether prior to talking to appellee Morrison, appellant consulted with his personal accountant or any other financial advisor about purchasing an interest in Trac-Line. He replied that he did not. Ortner deposition, page 42. He then was asked if prior to making his investment, he spoke to his personal accountant or any other financial advisor as to the purchase. He responded that he did not. These statements do not imply that he did not rely on the financial advice of appellees. The deposition is replete with instances in which Ortner testified that he relied on financial information provided by appellees, and statements made by appellees, in evaluating the purchase. The way the question to him was phrased, it is apparent counsel for appellee was asking if he sought the advice of any independent accountant to evaluate the purchase. While it is apparent from the record that there was no contractual relationship between appellant and appellees concerning the purchase of Trac-Line, that is not necessarily contradictory to his statement that he looked upon them as his financial advisors in conjunction with the purchase.
Appellees also argued in the motion to strike that in appellant's deposition, he testified that he was involved in discussions with Jeff Maibach regarding the possibility of becoming an investor for approximately eighteen months prior to meeting appellees, but in his affidavit he states that he would not have invested in Trac-Line without appellees' representations and advice. Again, this testimony is not contradictory. The fact that appellant considered the purchase of the interest prior to his involvement with appellees does not mean that he did not also rely upon the representations of appellees in finalizing his decision to purchase his interest.
In his deposition, appellant testified that he had a hunch the business would pay for itself in five years, based on the financial information provided to him, and this hunch was confirmed by a statement made by Morrison during their meeting. Ortner deposition, pages 53-54. Appellees argued that this was contradicted by his affidavit, in which he states he was advised by Morrison that the investment was sound and would pay for itself within five years. Again, this is not contradictory, as the mere fact that he had a hunch that this was the case, does not preclude him from relying on the representation of a professional confirming this hunch.
Appellees finally challenged appellant's statement in his affidavit that he was advised by appellee Kleshinski that Kleshinski had sent the previous owners of Trac-Line a letter, asserting that he had paid too much for his share, and demanding a rebate. In his deposition, when asked about conversations with Kleshinski concerning his decision to invest, he did not mention this particular fact. However, this statement in the affidavit does not directly contradict anything he said in his deposition concerning his conversations with Kleshinski.
The first assignment of error is sustained.
 II
In his second assignment of error, appellant challenges the propriety of summary judgment in the instant case.
Summary judgment is appropriate when there is no dispute as to any material fact, and the moving party is entitled to a judgment as a matter of law. Civ.R. 56 (C). Summary judgment shall not be rendered unless it appears from the evidence that reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made, that party being entitled to have the evidence construed most strongly in his favor. Id. We review summary judgment on the same standard and evidence as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 506 N.E.2d 212.
We first address the propriety of the summary judgment on appellant's claim for negligence. It is well established that a plaintiff must demonstrate the following elements in an action for professional negligence: (1) the existence of a legal duty, (2) a breach of that duty, (3) proximate cause, and (4) injury or damages. Second NationalBank of Warren v. Demshar (1997), 124 Ohio App.3d 645, 707 N.E.2d 30.
The trial court concluded that appellant presented no evidence to show that appellees owed him a duty of care. The seminal case in Ohio on the duty owed by an accountant for professional negligence is Haddon ViewInvestment Company v. Coopers Lybrand (1982), 70 Ohio St.2d 154,536 N.E.2d 212. In the syllabus of that case, the Ohio Supreme Court held that an accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen.In that case, the court eliminated the prior requirement that the party be in privity of contract with the accountant, but did not extend a duty of care to persons whose reliance on the representation is reasonably foreseeable. The court held that the accountant's duty to prepare reports using generally accepted accounting principles extends to any third person to whom they understand the reports will be shown for business purposes. Id. at 157.
In distinguishing Haddon View, the Court of Appeals for the Eleventh District, Ashtabula County, determined in Demshar, supra, that where the financial document was not an audit, as was the case in Haddon View, and where there is a disclaimer, on which Haddon View is silent, the plaintiff failed to provide additional evidence addressing this distinction in terms of how the accountant should have specifically foreseen that the plaintiff would rely on the report despite the disclaimer. 124 Ohio App.3d 645, 650. However, the Ninth District, in a Summit County case, rejected the argument that Haddon View must be read narrowly to encompass only those situations in which the document relied on is an audit, finding no indication in Haddon View that would warrant a limited reading. Adair v. First National Bank of Akron (December 2, 1987), Summit Appellate No. 13134. As the Haddon View decision makes no mention of any disclaimer, and does not either in syllabus law or in the text of the case specifically limit the decision to audits, we reject the narrow reading of Haddon View set forth in Demshar. In the instant case, reasonable minds could conclude that appellant's reliance on the representations and the financial reports prepared by appellees was specifically foreseen.
The document including the financial information specifically states that it was prepared for potential investors of Trac-Line. While appellant was given the document by Maibach, and not by appellees, he met with Larry Morrison to specifically discuss the matters in the report and the potential investment. When appellant asked appellee if an independent accountant should go over the financial condition of the company, Morrison told appellant, according to appellant's deposition testimony, that this would be a waste of time and money as appellees had already completed the same work. From this evidence, reasonable minds could conclude that appellant falls within a limited class of investors who appellees should have specifically foreseen would rely upon their representations.
We next turn to the issue of breach of duty of care. Appellant's expert, Julie Ecker, noted several areas in her deposition where she concluded appellees breached the standard of care and violated generally accepted accounting principles. First, she found that appellee should have disclosed in writing that they were not independent, as they were investing in the company themselves. Ecker deposition, pages 41, 62, 68. She further concluded that when listing the dealer reserve as an asset, which was not in itself in violation of accepted accounting principles, the entry should have been footnoted, and the fact that it was a contingency that money could be taken back out of this account, should have been disclosed. Ecker deposition, page 54. She further concluded that the report should have disclosed, based on statistics from past years, an approximation of withdrawals from this reserve account. Ecker deposition, page 57. She also stated that appellee should have re-issued the financial report after discovering "fraud" on the part of the company's bookkeeper. Ecker deposition, page 63. Further, in his deposition, appellant testified that when he asked Morrison what the dealer reserve account was, he stated that it was volume incentive, and did not inform him that the money could be withdrawn in the case of default of a loan. Appellant further testified concerning his discovery that the used inventory figures were incorrect, and there was a $100,000 discrepancy between the parts inventory as reported and the actual inventory. From this evidence, reasonable minds could conclude that appellees breached a duty of care in preparing the financial report and in their representations to appellant during the purchase process.
As to proximate cause, appellant states in his deposition testimony that he relied on the financial reports both in determining whether to purchase stock in Trac-Line, and in determining the purchase price. As the purchase price was based on the book value, and book value was based on the report prepared by appellee, any increase in the purchase price based on the misstatement of the book value could be the result of the breach of the duty of care by appellees. In his deposition, appellant states that at least in part, something Morrison said induced him to make his purchase in Trac-Line. Ortner deposition, page 56. He also testified that his hunch that the business would pay for itself in five years was based on the financial information provided to him by appellees. Ortner deposition, page 54. He referred to a conversation with Kleshinski, where he was told it was a good deal, and that Kleshinski himself was relying on Morrison's involvement, as Morrison was conservative. Ortner deposition, page 55. Based on this evidence, reasonable minds could conclude that any damage to appellant through an inflation of the purchase price of the company was proximately caused by the appellees' actions.
As to issue of damages, in his answers to interrogatories, particularly in interrogatory eight, appellant determines that his pro-rata share of the amount he overpaid for the business was $30,000 for the dealer financial reserve, $46,000 for inventory not actually present, and $7500 for a real estate appraisal. He also states in this interrogatory that as a result of over paying at the outset, and then being under paid when he sold his percentage, he felt he undersold by $151,250. From his deposition testimony, it is apparent that viewing the evidence in a light most favorable to appellant, he was damaged through paying more for his percentage of the company than he would have paid if the company had been properly valued, as the purchase price was based on the book value.
Appellees argue in their brief that appellant's comparative negligence in his handling of the purchase outweighs any possible negligence on their part. This is not an appropriate consideration for summary judgment. Issues of comparative negligence are for the jury to resolve unless the evidence is so compelling that reasonable minds can reach but one conclusion. Simmers v. Bentley Construction Company (1992),64 Ohio St.3d 642, 1992-Ohio-42. In the instant case, the evidence is not so compelling on the issue of comparative negligence as to justify summary judgment. Rather, as in most comparative negligence cases, the jury should resolve the issue of which party or parties were negligent, and in what proportion, pursuant to R.C. 2315.19.
The court erred in entering summary judgment on appellant's claim for professional negligence.
We next address the propriety of the summary judgment on the claim for fraud. To prove fraud, a plaintiff must establish the following elements: (1) a representation, or silence where there is a duty to disclose, (2) which is material to the transaction, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to its truth or falsity that knowledge may be inferred, (4) with the intent to mislead another into relying upon it, (6) justifiable reliance upon on the representation, and (7) a resulting injury proximately caused by the reliance. E.g. Williams v. Aetna Financial Company (1998),83 Ohio St.3d 464, 475, 1998-Ohio-294. In this case, there is no evidence from which reasonable minds could conclude appellees committed fraud in the instant case. There is nothing to indicate appellees made their misrepresentations with knowledge of their falsity or such disregard that knowledge may be inferred, with an intent to mislead appellant into relying upon it. In fact, appellant's expert stated in her deposition that she didn't know if there was fraud. Ecker deposition, page 42.
We also conclude that the trial court did not err in entering summary judgment on the claim for breach of a fiduciary duty. A fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another, and there is a resulting position of superiority or influence, acquired by virtue of this trust. Stone v.Davis (1981), 66 Ohio St.2d 74. A fiduciary duty may not always arise out of a contract, but may arise out of an informal relationship where both parties understand that special trust or confidence has been reposed. Id.
There is no evidence from which reasonable minds could conclude the relationship between appellant and appellees rose to this level of superiority, influence, or special trust. The court did not err in granting summary judgment on this claim.
Finally, we find the court did not err in granting summary judgment on the claim for punitive damages. Plaintiff is not entitled to punitive damages unless he can show that the tortfeasor acted with actual malice, which is defined as a state of mind under which a person's conduct is characterized by hatred, ill-will, a spirit of revenge, or conscious disregard for the rights and safety of other persons, that has a great probability of causing harm. E.g., Preston v. Murty (1987),32 Ohio St.3d 334, syllabus. Nothing in the evidence before the court demonstrates that appellees acted with actual malice. In fact, the misrepresentations made in the financial report affected their investment as well, as the purchase price was based on book value as determined by the report.
While in Assignment of Error I we concluded that the court erred in striking the affidavit of appellant as contradictory, consideration of the affidavit was not necessary to resolve the propriety of the summary judgment.
The second assignment of error is sustained in part and overruled in part.
The summary judgment of the Richland County Common Pleas Court on the claims of fraud, breach of fiduciary duty, and punitive damages is affirmed. The summary judgment on the claim for professional negligence is reversed. This cause is remanded to that court for further proceedings according to law, and consistent with this opinion.
By GWIN, P.J., and FARMER, J., concur EDWARDS, J., concurs separately