[Cite as *Kacsmarik v. Lakefront Lines Arena*, 2011-Ohio-2553.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 95981

MICHELE KACSMARIK, ET AL.

PLAINTIFFS-APPELLANTS

vs.

LAKEFRONT LINES ARENA, ET AL.

DEFENDANTS-APPELLEES

JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-651268

**BEFORE:**   E. Gallagher, J., Celebrezze, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**   May 26, 2011

## ATTORNEYS FOR APPELLANTS

David R. Grant
Stephen S. Vanek
Friedman, Domiano & Smith Co., L.P.A.
55 Public Square
Suite 1055
Cleveland, Ohio    44113

## ATTORNEYS FOR APPELLEES

### For Lakefront Lines Arena

Rafael P. McLaughlin
Martin T. Galvin
Reminger Co., L.P.A.
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio    44115-1093

### For Manhattan Construction Co., Inc.

Josh L. Schoenberger
Richard A. Williams
Williams & Petro, L.L.C.
338 S. High Street, 2nd Floor
Columbus, Ohio    43215-4546

**For MCG Architects**

Laura A. Hauser
Robert S. Lewis
Thompson Hine L.L.P.
3900 Key Center
127 Public Square
Cleveland, Ohio   44114

EILEEN A. GALLAGHER, J.:

{¶ 1} Plaintiffs-appellants Michele Kacsmarik (hereinafter "appellant") and Greg Kacsmarik, Sr., appeal the trial court's decisions granting summary judgment in favor of defendants-appellees Manhattan Construction Company, Inc. (hereinafter "Manhattan"), Lakefront Lines Arena and T.M.J. Investments L.L.C. (hereinafter "T.M.J."), and MCG Architects.  Appellants argue that the trial court erred in granting the appellees' motions because genuine issues of material fact precluded summary judgment. For the reasons that follow, we affirm.

{¶ 2} This case arises out of an incident that occurred on April 21, 2007 at Lakefront Lines Arena, 5310 Hauserman Road in Parma, Ohio, which is owned by appellee T.M.J. On that date, appellant Michele Kacsmarik's 11-year-old son, Greg Kacsmarik, was practicing with his ice hockey team at the Lakefront Lines Arena's hockey rink. Appellant arrived

shortly before the practice ended and sat on a bench, approximately nine feet and diagonally left from the exit door located in the ice rink's dasher boards.

{¶ 3} As the hockey practice was ending, individual players were leaving the ice, one at a time. The first player to exit the rink struggled to open the door from inside the rink. Appellant rose off the bench, walked six to eight steps to the rink door, and opened it for the player. With the rink door remaining open, appellant did not sit back down on the bench but rather stood with her back to the wall to the right of the bench. Appellant was not standing directly in front of the open rink door but rather slightly diagonally to the left of the door and approximately three feet away from it. Appellant positioned herself such that she was closer to the door than the bench itself.

{¶ 4} Appellant testified at deposition that while standing near the open door, she was "not really paying attention" to the activity on the ice. While she was waiting for her son to exit the rink, approximately six players came off the ice through the open rink door. One player, D.B., lost his footing as he exited the ice and began to somersault as his foot touched the floor outside the rink door. He eventually slid into appellant with his ice skate blade cutting into her right ankle. As a result of the incident, appellant suffered injuries to her ankle requiring multiple surgeries and

physical rehabilitation.

{¶ 5} Appellant brought suit in the Cuyahoga County Common Pleas Court on February 19, 2008, against a number of defendants, including the three appellees. Appellees Manhattan and MCG Architects were named as defendants alleging negligent construction and architectural work, respectively, in the conversion of the arena to an ice rink facility in 1997. Appellee T.M.J. is the owner of the arena and was named as a defendant based upon a theory of premises liability. The trial court granted separate summary judgment motions in favor of Manhattan, T.M.J., and MCG. Appellants' three assignments of error assert that the trial court erred in granting summary judgment in favor of each of the appellees.

{¶ 6} Our review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus; *Zivich v. Mentor Soccer Club* (1998), 82

Ohio St.3d 367, 696 N.E.2d 201. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

{¶ 7} Appellants' first assignment of error asserts that the trial court erred in granting summary judgment in favor of appellee Manhattan. Count four of appellants' amended complaint alleges that Manhattan was negligent in their construction work at Lakefront Lines Arena in 1997. Manhattan was the general contractor for the renovation of the arena into an ice rink and was responsible for assuring that the subcontractors followed the renovation plans. Specifically, appellant argues that Manhattan deviated from the architectural plans and built the bench that she sat on prior to her injury. The construction plans did not call for any spectator seating to be built.

{¶ 8} The trial court, in its journal entry granting summary judgment in favor of Manhattan, concluded that Manhattan did not construct the subject bench, stating, "[a]lthough the evidence does not establish when, how, or by whom the spectator bleachers were installed, it is undisputed that the spectator bleachers were not installed by this defendant at that time, or at any subsequent time."

{¶ 9} Contrary to the trial court's conclusion, the record clearly reveals how the subject benches came into being. David Erne, the owner of Manhattan Construction, testified that the subject bench was built by volunteers and tradesmen using Manhattan's materials and supervised by Manhattan. Erne himself supervised the construction of the benches to assure that it was done correctly. (Deposition of David Erne, p. 69-70.)

{¶ 10} However, the fact that the trial court incorrectly concluded that the origin of the subject bench could not be ascertained does not end our inquiry. To overcome a summary judgment motion in a negligence action, a plaintiff must prove that the defendant breached a duty owed to the plaintiff and that this breach was the proximate cause of the plaintiff's injuries. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 693 N.E.2d 271. In the present case, even assuming that Manhattan's actions in supervising the installation of the subject bench, contrary to the architect's plans, demonstrated a duty owed to appellant and a breach of that duty, summary judgment remained proper on wholly separate grounds. The evidence here irrefutably demonstrates that the bench was not the proximate cause of appellant's injuries.

{¶ 11} "Proximate causation" has been described as "some reasonable connection between the act or omission of the defendant and the damage the

plaintiff has suffered." *Marsh v. Heartland Behavioral Health Ctr.*, Franklin App. No 09AP-630, 2010-Ohio-1380, ¶40, quoting Prosser, Law of Torts (5 Ed.1984) 263, Section 41. "[T]he proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred." *Sabolik v. HGG Chestnut Lake Ltd. Partnership*, 180 Ohio App.3d 576, 583, 2009-Ohio-130, 906 N.E.2d 488, quoting *Aiken v. Indus. Comm.* (1944), 143 Ohio St. 113, 53 N.E.2d 1018. In other words, proximate cause is "that without which the accident would not have happened, and from which the injury or a like injury might have been anticipated." Id., citing *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 539 N.E.2d 614, quoting *Corrigan v. E.W. Bohren Transport Co.* (1968), 408 F.2d 301, 22 Ohio Misc. 201.

{¶ 12} Generally, the issue of proximate cause is a question of fact and is not resolvable by means of summary judgment. *Lecso v. Heaton*, Cuyahoga App. No. 94121, 2010-Ohio-3880, citing *Creech v. Brock & Assoc. Constr.*, 183 Ohio App.3d 711, 2009-Ohio-3930, 918 N.E.2d 541, ¶14. However, summary judgment may be granted on the issue of proximate cause where the facts are clear and undisputed and the relation to cause and effect is so apparent that only one conclusion may be fairly drawn." Id.,

citing *Schutt v. Rudolph-Libbe, Inc.* (Mar. 31, 1995), Wood App. No. WD-94-064.

{¶ 13} The undisputed facts in this case reveal that the bench was wholly unrelated to appellant's injury. Appellant was not sitting on the bench when she was injured. The evidence is that appellant left the bench, opened the ice rink door and instead of returning to the bench, stood approximately three feet back and diagonally exposed to the open rink door while as many as six players exited. Appellant testified at her deposition that, had she not been standing where she was, she would not have been injured. Photos of the scene reveal that the location of the bench, unlike the area where plaintiff was standing when struck, is not in a direct line of sight of a player exiting the ice rink. Appellant does not argue, nor does it appear from the photos to be physically possible, that had she been utilizing the bench complained of at the time of the incident, that she would have been injured. The sole conclusion that can be drawn from the evidence is that the bench played no role in appellant's injury. Appellant's first assignment of error is overruled.

{¶ 14} In their second assignment of error, appellants argue that the trial court improperly granted summary judgment in favor of appellee T.M.J. on appellants's premises liability claim. T.M.J.'s motion for summary

judgment asserted various defenses, including that appellant's injury resulted from an open and obvious condition on the property. The trial court granted T.M.J.'s motion for summary judgment without issuing a formal opinion.

{¶ 15} A business owner owes a business invitee, such as appellant, a duty of ordinary care in maintaining the premises in a reasonably safe condition so that invitees are not subject to unreasonable dangers. *Frano v. Red Robin Internatl., Inc.*, 181 Ohio App.3d 13, 2009-Ohio-685, 907 N.E.2d 796; *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 480 N.E.2d 474. Although a business is not an insurer of its invitee's safety, it must warn them of latent or concealed dangers if it knows or has reason to know of the hidden dangers. *Frano*, *Jackson v. Kings Island* (1979), 58 Ohio St.2d 357, 390 N.E.2d 810.

{¶ 16} "The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability." *Adleman v. Timman* (1997), 117 Ohio App.3d 544, 690 N.E.2d 1332. A business has no duty to protect an invitee from dangers that are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them. *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 233 N.E.2d 589. "The rationale behind the [open

and obvious] doctrine is that the open and obvious nature of the hazard itself serves as a warning." *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 595 N.E.2d 902. The open and obvious doctrine concerns the first element of negligence, whether a duty exists. *Sidle*. Therefore, the open and obvious doctrine obviates any duty to warn of an obvious hazard and bars negligence claims for injuries related to the hazard. *Henry v. Dollar Gen. Store*, Greene App. No. 2002-CA-47, 2003-Ohio-206; *Hobart v. Newton Falls*, Trumbull App. No. 2002-T-0122, 2003-Ohio-5004. Where a hazard is open and obvious, a business owner owes no duty to an invitee, and it is unnecessary to consider the issues of breach and causation. *Frano, Ward v. Wal-Mart Stores Inc.*, Lake App. No. 2000-L-171, 2001-Ohio-4041.

{¶ 17} The Supreme Court of Ohio reaffirmed the viability of the open and obvious doctrine in *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088. In *Armstrong*, the court held that the emphasis in analyzing open and obvious danger cases relates to the threshold issue of duty. The rule properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it. Id. "The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it

absolves the property owner from taking any further action to protect the plaintiff." Id. at 82. Moreover, the open and obvious danger does not actually have to be observed by the plaintiff in order for it to be an open and obvious condition under the law. *Konet v. Mark Glassman, Inc.*, Lake App. No. 2004-L-151, 2005-Ohio-5280. The determinative issue is whether the condition was observable. Id.

{¶ 18} We find the open and obvious doctrine to be applicable to the present circumstances. When an ice rink's door is closed, outside spectators at ground level are physically separated from hockey players, hockey sticks, ice skate blades, and hockey pucks. Ground level spectators such as appellant are protected by the rink's dasher boards, plexiglass, and netting. The players are encased inside the ice rink such that the present collision cannot occur. However, when the ice rink's door is open, the above protections drop away. A person standing in the vicinity of an open ice rink door is exposed to the activity on the ice, including, as in this case, players and their skate blades as they negotiate the rink's exit. Appellant testified at deposition that she had previously attended hundreds of hockey practices and games. She was aware that people do fall when they exit the ice. Appellant had previously seen players lose their footing as they have exited ice rinks. We find that the danger inherent in standing in the immediate

proximity of an open ice rink door while young hockey players are negotiating the exit at variable speeds is so obvious that it absolves the property owner from taking any further action to protect the plaintiff. Appellant's second assignment of error is overruled.

{¶ 19} Appellant's third and final assignment of error asserts that the trial court erred in granting summary judgment in favor of appellee MCG Architects. Count four of appellant's amended complaint alleges that MCG Architects negligently performed its design responsibilities in the renovation of Lakefront Lines Arena into an ice rink facility. In regards to the renovation of the facility, MCG Architects contracted in 1997 to provide the design and construction documents for modifications to existing locker rooms, restrooms, shower facilities, maintenance room, offices, weight room, storage room, and mechanical room. Relevant to the present case, MCG Architects contracted to provide plans for the new ice pit. Notably, MCG Architects' renovation duties did not call for the design of any spectator seating. MCG Architects' contract also specifically provided that, "Construction Phase Services are not included as part of this proposal * * * MCG will not be able to certify to the actual execution of the construction relative to its compliance to the Construction Documents or to the quality and completeness." Plaintiff's brief in opposition to motion for summary

judgment, Exhibit 2.

{¶ 20} Appellants allege that MCG Architects was negligent in the performance of its architectural duties by failing to include spectator seating in the ice rink's plans and, more specifically, failing to create a design that physically separated fully geared hockey players entering and exiting the rink from coming into contact with spectators.

{¶ 21} "It is well-established that a plaintiff must demonstrate the following elements in an action for professional negligence: (1) the existence of a legal duty; (2) a breach of that duty; (3) proximate causation; and (4) injury or damages. If the party moving for summary judgment in a negligence action can point to evidence illustrating that the nonmoving party will be unable to prove any one of these elements, then the movant is entitled to judgment as a matter of law." *Second Natl. Bank of Warren v. Demshar* (1997), 124 Ohio App.3d 645, 707 N.E.2d 30.

{¶ 22} "Generally, one who contracted in a specialized professional capacity to provide the design for a particular structure may be held to respond in damages for the foreseeable consequences of a failure to exercise reasonable care in the preparation of the design." *Cincinnati Riverfront Coliseum, Inc. v. McNulty Co.* (1986), 28 Ohio St.3d 333, 337, 504 N.E.2d 415. Whether an architect exercises reasonable care in the preparation of

designs depends upon the standard of care that licensed architects must follow. Expert testimony is required to establish the standard of care, unless the lack of skill or care of the professional is so apparent as to be within the comprehension of a layperson and requires only common knowledge and experience to understand it. *Simon v. Drake Constr. Co.* (1993), 87 Ohio App.3d 23, 621 N.E.2d 837.

{¶ 23} In the present instance, in response to MCG Architects' motion for summary judgment, appellant offered the affidavit and report of Alan R. Caskey in criticism of the architectural work done during the renovation. Mr. Caskey avers in his affidavit that he is a "park and recreation expert" with "extensive education, training, and experience in planning, designing and publishing in this field, including the design, construction and operation of ice skating facilities."

{¶ 24} A review of Mr. Caskey's affidavit and preliminary report reveal that he is critical of MCG Architects' design work on the arena in that it, "could have separated the spectators from the hockey player's movement to/from the locker room to the ice rink." However, Mr. Caskey also averred that this separation could have been accomplished by "ice rink management policies." Mr. Caskey is also critical of MCG Architects for not redesigning safe spectator seating into the plans despite such seating being removed by

MCG's client. Mr. Caskey asserted at deposition that a functional analysis should have been done, if not by MCG Architects then by a consultant such as himself to uncover potentially hazardous conditions at the ice rink. However, Mr. Caskey concedes that this functional analysis is not necessarily done by the architect; rather, Mr. Caskey himself often performs this type of analysis.

{¶ 25} At no point in Mr. Caskey's affidavit or his preliminary report does he assert that he is familiar with the standard of care that licensed architects must follow in the present situation. Mr. Caskey is not a licensed architect and specifically stated at deposition, that, "I'm not trying to testify as an architect. I'm trying to testify as the individual who works as part of the team with the architect to determine what the functional plan of the facility is." Caskey Deposition, p. 127-128. Although Mr. Caskey is critical of MCG Architects for failing to consult with a functional analyst such as himself, he does not and apparently, is not qualified to testify that a licensed architect fails to exercise reasonable care in the preparation of an ice rink design when he fails to undertake such consultations.

{¶ 26} At oral argument appellants acknowledged that Mr. Caskey could not testify as to the relevant standard of care for an architect in this instance. Instead, appellants argued that the deposition testimony of a

former MCG architect, John Burk, established the standard of care. In the relevant portion of the testimony cited by appellants, John Burk stated, "as long as you don't put the bench right at the — ice or right at the door to the ice, I would say that benches around [the] facility would be reasonably safe — I would not put an entrance — to the ice or exit to the ice right off of seating." This statement, however, is irrelevant to appellant's theory of liability against MCG; that MCG's failure to create a design that physically separated fully geared hockey players entering and exiting the rink from coming into contact with spectators was a breach of an architect's standard of care. Appellants do not allege, and the facts clearly reveal, that MCG had nothing to do with the creation of the bench near the ice rink door.

{¶ 27} Under these circumstances, we hold that the trial court did not err in granting summary judgment in favor of MCG Architects as appellants failed to establish a duty owed by MCG Architects or a breach of that duty. Appellant's third assignment of error is overruled.

{¶ 28} The judgment of the trial court is affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
SEAN C. GALLAGHER, J., CONCUR